No. 25-3664

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

—————————

COUNTY OF KING, et al.,

Plaintiffs-Appellees,

v.

SCOTT TURNER, Secretary, United States Department of Housing and
Urban Development, et al.,

Defendants-Appellants.

—————————

On Appeal from the United States District Court
for the Western District of Washington

—————————

BRIEF FOR APPELLANTS

—————————

BRETT A. SHUMATE
  *Assistant Attorney
  General*

DANIEL TENNY
SARAH N. SMITH
  *Attorneys, Appellate Staff
  Civil Division, Room 7533
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-0173*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION ...........................................2

STATEMENT OF THE ISSUE ....................................................2

STATEMENT OF THE CASE ......................................................3

    A.    Statutory and Regulatory Background ..................................3

    B.    Factual Background .........................................................7

    C.    Prior Proceedings ..........................................................10

SUMMARY OF ARGUMENT ....................................................13

STANDARD OF REVIEW............................................................15

ARGUMENT ..................................................................................15

I.    The Challenged Funding Conditions Are Authorized by
Statute. ....................................................................................15

    A.    Federal law requires grant recipients to comply with
federal anti-discrimination law as a condition of
payment............................................................................16

    B.    HUD may establish conditions of funding to carry out
the CoC program effectively and efficiently. ......................20

    C.    HUD and DOT did not act arbitrarily or capriciously in
imposing the challenged conditions....................................24

II.    The Remaining Injunction Factors Weigh Against an
Injunction. ...............................................................................26

CONCLUSION ...............................................................................28

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*City of Los Angeles v. Barr*,
929 F.3d 1163 (9th Cir. 2019) ............................................................25

*Credit Suisse First Bos. Corp. v. Grunwald*,
400 F.3d 1119 (9th Cir. 2005) ............................................................15

*Dalton v. Specter*,
511 U.S. 462 (1994) ............................................................................26

*Guardians Ass'n v. Civil Serv. Comm'n*,
463 U.S. 582 (1983) .....................................................................16, 19

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ............................................................................25

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ..............................................................................25

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
579 U.S. 176 (2016) ............................................................................19

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ................................................................................15

**Statutes:**

Consolidated Appropriations Act, 2024,
Pub. L. No. 118-42, § 202, 138 Stat. 25, 153........................................23

False Claims Act,
31 U.S.C. § 3729(a)..............................................................................19
31 U.S.C. § 3729(b)(4)........................................................................8, 9

iii

Infrastructure Investment and Jobs Act,
    Pub. L. No. 117-58, 135 Stat. 429 (2021) ............................................6, 7

8 U.S.C. § 1611(a) ........................................................................................23

8 U.S.C. § 1642(d) ........................................................................................23

23 U.S.C. § 502 note .......................................................................................7

28 U.S.C. § 1292(a)(1) ....................................................................................2

28 U.S.C. § 1331 .............................................................................................2

42 U.S.C. § 2000d .........................................................................................16

42 U.S.C. § 2000d-1 ...............................................................................16, 18

42 U.S.C. § 11360(29) .....................................................................................3

42 U.S.C. §§ 11381-11389 ..............................................................................3

42 U.S.C. § 11382(b) .......................................................................................4

42 U.S.C. § 11382(c)(2)(A) ............................................................................4

42 U.S.C. § 11382(d)(1) ..................................................................................4

42 U.S.C. § 11382(d)(2) ..................................................................................4

42 U.S.C. § 11383 .........................................................................................24

42 U.S.C. § 11385 ...........................................................................................3

42 U.S.C. § 11386(b) ...........................................................................4, 11, 20

42 U.S.C. § 11386(b)(2) ..................................................................................4

42 U.S.C. § 11386(b)(3) ............................................................................4, 22

42 U.S.C. § 11386(b)(4)(D) ..................................................... 22

42 U.S.C. § 11386(b)(6) ........................................................... 4

42 U.S.C. § 11386(b)(7) ....................................................... 4, 22

42 U.S.C. § 11386(b)(8) ........................................ 5, 11, 14, 20

49 U.S.C. § 103(i) .................................................................... 7

49 U.S.C. § 5307 ..................................................................... 5

49 U.S.C. § 5309 ..................................................................... 5

49 U.S.C. § 5334(a)(1) ......................................................... 5, 12

49 U.S.C. § 5334(a)(9) ......................................................... 5, 12

49 U.S.C. § 5337 ..................................................................... 5

49 U.S.C. § 5339 ..................................................................... 5

49 U.S.C. § 22907 ................................................................... 7

49 U.S.C. § 22908 ................................................................... 7

49 U.S.C. § 22909 ................................................................... 7

49 U.S.C. § 47101 *et seq.* ..................................................... 6

49 U.S.C. § 47108(a) .............................................................. 6

**Regulations:**

24 C.F.R. § 1.5 ..................................................................... 16

49 C.F.R. § 21.7 ................................................................... 16

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ........................................................2

## INTRODUCTION

To receive federal funding, grant recipients must generally enter into grant agreements with the government, in which the recipient agrees to comply with certain conditions in exchange for federal dollars. The conditions at issue here fall into two categories: certifying acceptance of recipients' existing legal obligations or placing reasonable limitations on the use of federal funds. These sorts of conditions are routine, plainly fall within the relevant agencies' statutory authority, and are not arbitrary and capricious. The district court nonetheless issued a preliminary injunction barring the agencies from enforcing the challenged conditions or withholding funds based on the challenged conditions.

The district court further erred in concluding that the equities weigh in favor of preliminary relief. Plaintiffs contend that absent an injunction, they will be forced to choose between forgoing grant funds and accepting unlawful conditions. But plaintiffs can avoid such harms by accepting the challenged conditions during the pendency of this litigation. Plaintiffs have not attempted to show that doing so would be costly, particularly because the conditions largely mirror existing legal

obligations. On the other side of the ledger, the government has a strong interest in ensuring that grant recipients comply with federal law and that federal dollars are spent effectively.

For these reasons, the government respectfully requests that this Court vacate the district court's preliminary injunction.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331. ER-55. The district court entered a preliminary injunction on June 3, 2025. ER-3-51. The government filed a timely notice of appeal on June 9, 2025. ER-174-75; *see* Fed. R. App. P. 4(a)(1)(B) (60-day time limit). This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUE

Whether the district court abused its discretion in issuing a preliminary injunction prohibiting federal agencies from enforcing grant conditions that (1) require recipients of federal funds to certify their compliance with federal anti-discrimination law and (2) govern how federal dollars can be spent.

2

## STATEMENT OF THE CASE

### A.  Statutory and Regulatory Background

At issue in this case are several grant programs administered by the Department of Housing and Urban Development (HUD) and the Department of Transportation (DOT).  As explained in further detail below, HUD's Continuum of Care program provides grants to local governments and non-profits who use those funds to provide housing and supportive services to the homeless.  DOT and its operating administrations operate many grant programs that provide funding to maintain and develop the nation's infrastructure, from airports to rail to mass transit systems.

*HUD Continuum of Care Grants*

In the McKinney-Vento Homeless Assistance Act, Congress created the Continuum of Care (CoC) program, by which HUD awards grants to non-profits and local governments that provide housing and supportive services to the homeless.  42 U.S.C. §§ 11381-11389.  Supportive services include, among other things, childcare, job training, outpatient health services, food, mental health services, and assistance in obtaining other federal, state, and local assistance.  *Id.* §§ 11360(29), 11385.

3

After Congress appropriates funding, the Secretary publishes a notice of funding availability. 42 U.S.C. § 11382(b). Applicants apply and grants are "conditionally awarded." *Id.* § 11382(c)(2)(A). Recipients then have at least nine months to meet all requirements for obligation of those funds, including site control, obtaining matching funds, and environmental review requirements. *Id.* § 11382(d)(1). Once the recipient meets the required conditions, HUD has 45 days to obligate the funds, which it does by executing a grant agreement with the recipient. *Id.* § 11382(d)(2).

To receive funding, the recipient must agree to various conditions. 42 U.S.C. § 11386(b). The recipient must agree, for example, to monitor and report the project's progress and the provision of matching funds to HUD. *Id.* § 11386(b)(2), (6). The recipient must further agree to ensure, "to the maximum extent practicable," that homeless individuals are involved in maintaining and operating facilities for the project and in providing supportive services. *Id.* § 11386(b)(3). And the recipient must "take the educational needs of children into account" by ensuring, to the maximum extent possible, that children are placed near their schools so that their education is not adversely affected. *Id.* § 11386(b)(7).

4

Additionally, the recipient must agree "to comply with such other terms and conditions as the Secretary may establish to carry out this part in an effective and efficient manner." *Id.* § 11386(b)(8).

*Federal Transit Administration Grant Programs*

DOT, acting through the Federal Transit Administration (FTA), provides federal funds to state and local governments for public transit services. Among other programs, FTA administers grants to cover the operating costs of public transit facilities and equipment in urban areas, 49 U.S.C. § 5307; grants to fund "fixed guideway" systems such as rail, passenger ferry, and bus rapid transit systems, *id.* § 5309; grants to fund maintenance and repair of local transit systems, *id.* § 5337; and grants to fund the purchase and maintenance of buses and bus facilities, *id.* § 5339. In carrying out FTA's funding programs, the Secretary of Transportation may "prescribe terms for a project" that receives federal funding. *Id.* § 5334(a)(1). He is also authorized to "include in an agreement or instrument . . . a covenant or term [he] considers necessary to carry out" FTA's funding programs. *Id.* § 5334(a)(9).

*Federal Highway Administration Grant Programs*

5

DOT also administers grants through the Federal Highway Administration (FHWA) to support state and local governments in the design, construction, and maintenance of the nation's highways. FHWA grant programs include those codified in Title 23 of the U.S. Code and those established in the Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, 135 Stat. 429 (2021).

*Federal Aviation Administration Grant Programs*

Through the Federal Aviation Administration (FAA), DOT provides federal funds to public agencies for the planning and development of airports. Among other grant programs, FAA administers the Airport Improvement Program, 49 U.S.C. § 47101 *et seq.*, and the Airport Infrastructure Grants program, Pub. L. No. 117-58, 135 Stat. at 1416-1418. In awarding such grants, the Secretary "may impose terms . . . that [he] considers necessary to carry out" FAA's funding programs. 49 U.S.C. § 47108(a).

*Federal Railroad Administration Grant Programs*

The Federal Railroad Administration (FRA) provides federal funds to support state and local rail infrastructure projects. FRA provides funding for states and local governments to, among other things, improve

6

passenger and freight rail transportation systems, 49 U.S.C. § 22907, to restore or enhance intercity rail passenger transportation, *id.* § 22908, and to improve the safety of railroad crossings, *id.* § 22909. The Secretary of Transportation "may make, enter into, and perform such contracts, grants, leases, cooperative agreements, and other similar transactions . . . as [he] may determine to be necessary or appropriate to carry out functions at [FRA]." *Id.* § 103(i).

### *DOT SMART Grant Program*

The Strengthening Mobility and Revolutionizing Transportation (SMART) grant program was established in the Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, 135 Stat. at 840-845, to provide competitive grants to public sector agencies for projects that use advanced technologies to improve transportation efficiency and safety. 23 U.S.C. § 502 note.

### B.   Factual Background

1.  In January 2024, HUD posted a notice of funding availability for CoC grants for fiscal years 2024 and 2025. ER-10. HUD conditionally awarded CoC grants for fiscal year 2024 in January 2025.

ER-10. Shortly thereafter, HUD presented grant recipients with agreements that included the following conditions:

A.   The recipient "shall not use grant funds to promote 'gender ideology,' as defined in E.O. 14168 Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government";

B.   The recipient "agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of [the False Claims Act, 31 U.S.C. § 3729(b)(4)]";

C.   The recipient "certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964";

D.   The recipient "shall not use any Grant Funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment";

E.   "No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation"; and

F.   "Subject to the exceptions provided by [the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA")], the recipient must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States."

ER-14 (alterations in original) (quotation marks omitted). The CoC grant agreements also provide that the agreement, the recipient's use of grant funds, and the recipient's operation of projects assisted with grant funds are "governed by" "all current Executive Orders." ER-15.

2. Grant programs administered by DOT and its operating administrations are subject to agreements or assurances that are regularly updated to reflect current law and policy. *See* ER-158. In spring 2025, FTA, FHWA, FAA, and FRA updated their respective agreements to include, as relevant here, the following conditions:

A. The recipient "agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of [the False Claims Act, 31 U.S.C. § 3729(b)(4)]"; and

B. The recipient "certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws."[1]

ER-15 (FTA); *see also* ER-108-11 (FHWA); ER-112-15 (FAA); ER-118-19 (FRA); ER-120-22 (SMART grants). DOT's agreements also maintain

---

[1] The amended agreements also included a third condition, related to cooperation with federal immigration officials, but the government is not appealing the district court's preliminary injunction as to that condition.

9

the long-standing requirement that funding recipients comply with all applicable federal laws, regulations, and requirements, including executive orders. ER-15.

### C. Prior Proceedings

1. Plaintiffs are counties, cities, and local housing and transportation agencies that have received or been conditionally awarded grants from HUD and DOT that are subject to the challenged funding conditions. ER-52-156. Plaintiffs allege that those funding conditions are unconstitutional, exceed the agencies' statutory authority, and violate the Administrative Procedure Act. *See* ER-128-43.

2. The district court entered a preliminary injunction on June 3, 2025, prohibiting HUD and DOT from (1) enforcing the challenged conditions to funds awarded to the plaintiffs, (2) withholding grant funding from plaintiffs based on the challenged conditions, (3) requiring plaintiffs to certify compliance with the challenged conditions, or (4) refusing to process plaintiffs' grant agreements due to their participation in this suit. ER-48-51.

10

The district court concluded that plaintiffs were likely to succeed on their claim that the challenged funding conditions are not authorized by statute and therefore violate the separation-of-powers doctrine. ER-33-39. The court first determined that the Homeless Assistance Act does not expressly authorize any of the challenged funding conditions imposed by HUD. ER-36. The court noted that the Act enumerates certain conditions to which funding recipients must agree, such as agreeing to periodically report the project's progress and the acquisition of matching funds to HUD. ER-36 (citing 42 U.S.C. § 11386(b)). And while the court acknowledged that the Act empowers the Secretary to impose "other terms and conditions . . . to carry out" the CoC program "in an effective and efficient manner," 42 U.S.C. § 11386(b)(8), the court reasoned that this catchall provision does not authorize the challenged conditions, which it deemed "[s]ubstantive conditions implicating controversial policy matters that are unrelated to the authorizing statute," ER-36. Relying on the canon of *ejusdem generis*, the court reasoned that the challenged conditions were not "'of the same kind'" as those expressly required by 42 U.S.C. § 11386(b). ER-36.

11

The district court similarly concluded that DOT lacked statutory authority to impose its challenged funding conditions. ER-37. The court found no authority for the conditions in the various statutes creating the grant programs at issue, and it rejected the government's argument that 49 U.S.C. § 5334(a)(1), (9), which authorizes the Secretary to "prescribe terms for a project" that receives funding and include terms he "considers necessary to carry out" FTA programs in grant agreements, provided such authority. ER-38 (quoting 49 U.S.C. § 5334(a)(1), (9)). The court determined that these provisions only grant the Secretary authority to "administer the programs" and not the power "to inject substantive policies into them." ER-38.

The district court also determined that plaintiffs were likely to prevail on their claim that HUD and DOT acted arbitrarily and capriciously in imposing the challenged funding conditions. ER-39-40. The court concluded that HUD and DOT had not demonstrated that the challenged funding conditions were "the result of 'reasoned decisionmaking,'" and the court faulted the agencies for not explaining why the conditions were adopted. ER-40.

12

The district court concluded that plaintiffs had satisfied the remaining preliminary injunction factors. ER-41-47. The court found that plaintiffs would be irreparably harmed in the absence of injunctive relief because they would be forced either to accept the challenged conditions or risk losing federal funds. ER-41-42. Given this finding, the court determined that the balance of the equities favored plaintiffs. ER-46-47.

## SUMMARY OF ARGUMENT

**I.** The district court erred in concluding that HUD and DOT lack statutory authority to impose the challenged conditions. Plaintiffs challenge funding conditions that (1) ask recipients to certify their compliance with existing federal anti-discrimination law and acknowledge that their compliance is material to the government's decision to award funding and (2) govern how HUD's Continuum of Care grant funds may be used. As to the first category, federal law requires recipients of federal assistance to comply with federal anti-discrimination law, and the conditions are lawful on that basis. As to the second category, the Homeless Assistance Act authorizes the HUD Secretary to establish additional funding conditions to carry out the

13

program in an efficient and effective manner. 42 U.S.C. § 11386(b)(8). The remaining conditions do just that: they clarify that CoC grant funds cannot be used to promote gender ideology, to fund elective abortions, or to serve ineligible aliens. As such, the conditions largely clarify existing restrictions on the use of CoC funds. Because the challenged conditions merely clarify recipients' existing legal obligations and existing restrictions on federal funds, HUD's and DOT's actions were not arbitrary or capricious.

II.   The equities also weigh against preliminary relief. Plaintiffs argue that absent a preliminary injunction, they must either forgo grant funding or accept conditions they contend are unlawful. But plaintiffs have not even attempted to explain how they will be irreparably harmed by agreeing to the challenged conditions, which largely clarify recipients' existing legal obligations and existing restrictions on the use of CoC funds. On the other side of the balance, the Executive Branch has a strong interest in both enforcing federal anti-discrimination law and ensuring that federal grant dollars are used as Congress intended.

## STANDARD OF REVIEW

To obtain the "extraordinary remedy" of a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). This Court reviews an order regarding preliminary injunctive relief for abuse of discretion. *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1126 n.7 (9th Cir. 2005). Any "underlying issues of law," however, are reviewed de novo. *Id.*

## ARGUMENT

### I. The Challenged Funding Conditions Are Authorized by Statute.

The funding conditions at issue here require recipients of federal funding to (1) certify that they comply with federal anti-discrimination law and acknowledge that such compliance is material to the government's grant award and (2) agree that program funds will not be put to specified unapproved uses. Both categories of funding conditions are lawful, and the district court erred in concluding otherwise.

15

## A. Federal law requires grant recipients to comply with federal anti-discrimination law as a condition of payment.

HUD and DOT require recipients of grant funding to certify their compliance with federal anti-discrimination law and agree that their compliance is material to the government's payment decisions for purposes of the False Claims Act. These conditions are neither novel nor unlawful: by calling attention to recipients' pre-existing obligation to comply with the law, HUD and DOT are not imposing any new obligations on recipients.

Under Title VI of the Civil Rights Act of 1964, recipients of federal assistance must comply with federal anti-discrimination law. 42 U.S.C. § 2000d. Title VI further "authorize[s] and direct[s]" federal agencies that award federal funds to effectuate section 2000d by issuing rules and regulations. *Id.* § 2000d-1. Pursuant to that authority, HUD and DOT have promulgated regulations requiring that applications for financial assistance include, as a condition of payment, assurances that the recipient complies with federal anti-discrimination law. 24 C.F.R. § 1.5 (HUD); 49 C.F.R. § 21.7 (DOT); *see also Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 629-30 (1983) (Marshall, J., dissenting)

16

(explaining that "[e]very application for Federal financial assistance must, 'as a *condition* to its approval and the extension of any Federal financial assistance,' contain assurances that the program will comply with Title VI *and* with all requirements imposed pursuant to the executive regulations issued under Title VI" (citing regulations of federal departments and agencies, including HUD and DOT)). Indeed, plaintiffs acknowledge that they have "routinely certified compliance with federal nondiscrimination laws as a condition of federal funding in the past." *See, e.g.*, ER-94.

The anti-discrimination conditions at issue here are no different and simply require recipients to certify their compliance with existing law. HUD requires CoC grant recipients to certify that they "d[o] not operate any programs that violate any applicable Federal anti-discrimination laws," including Title VI. ER-14 (quotation marks omitted). And while DOT requires recipients to certify specifically that any DEI programs they operate comply with federal anti-discrimination law, plaintiffs cannot plausibly argue that the more specific certification is impermissible given that it is subsumed within the broader certification that prohibits funding recipients from operating *any*

17

programs that violate federal anti-discrimination law. *See, e.g.*, ER-165 (2025 FTA Master Agreement requiring recipient to "agre[e] that it must comply with applicable federal civil rights laws, regulations, and requirements"). Accordingly, the Fourth Circuit unanimously granted the government's motion for a stay in a case challenging Executive Order 14,173, which directs federal agencies to require grant recipients to certify that they do not operate unlawful DEI programs. Order Granting Defendants' Motion for a Stay Pending Appeal, *National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025); *see id.* at 7 (Harris, J. concurring) (explaining that the challenged provision "appl[ies] only to conduct that violates existing federal anti-discrimination law"). The conditions challenged here are plainly lawful under Title VI and regulations issued under Title VI. 42 U.S.C. § 2000d-1.

By requiring grant recipients to certify their compliance with federal anti-discrimination law, the federal government calls recipients' attention to those obligations and makes them certify that they understand and have accepted those obligations. Recipients' "assurances" of compliance are "given 'in consideration of' federal aid,

18

and the federal government extends assistance 'in reliance on' the assurance of compliance." *Guardians*, 463 U.S. at 630 (Marshall J., dissenting). Such certifications can thus be relevant to claims under the False Claims Act, which imposes civil liability on persons who knowingly make false statements "material to a false or fraudulent claim" for payment from the government. 31 U.S.C. § 3729(a).

A false certification of compliance with civil rights laws would be a false statement, and in the grants at issue here, HUD and DOT have informed recipients that their "compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions." ER-14-15 (quotation marks omitted). The government thus puts recipients on notice that their compliance with those obligations is material, *i.e.*, that it is "capable of influencing" the government's payment decision. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193 (2016) (quotation marks omitted). Providing such notice, and asking recipients to acknowledge it, is similarly unremarkable and adds nothing to recipients' obligations.

19

### B. HUD may establish conditions of funding to carry out the CoC program effectively and efficiently.

The remaining conditions challenged by plaintiffs restrict how recipients can use CoC grant funds. Specifically, HUD requires CoC grant recipients to agree (1) not to use grant funds to promote "gender ideology" as defined in Executive Order 14,168; (2) not to use grant funds to fund or promote elective abortions; (3) in the case of state and local government recipients, not to use grant funds in a manner that promotes illegal immigration; and (4) to verify that no federal benefit is provided to an ineligible alien, subject to the exceptions provided by PRWORA. These conditions largely track existing restrictions on CoC funds and are lawful under the Housing Assistance Act's catchall provision, 42 U.S.C. § 11386(b)(8).

Before the Secretary can disburse CoC grant funds, the recipient must enter into an agreement with HUD in which it agrees to certain conditions. 42 U.S.C. § 11386(b). In addition to terms specifically provided by Congress, the recipient must agree to "terms and conditions" the Secretary establishes to carry out the CoC program in "an effective and efficient manner." *Id.* § 11386(b)(8). This provision

20

comfortably encompasses the funding conditions enumerated above. Each condition is directed at ensuring that grant dollars are not used for certain purposes: the promotion of "gender ideology," funding of elective abortions, and serving ineligible aliens. By prohibiting recipients from using grant funds for these purposes, the conditions ensure that grant funds are used effectively and efficiently to house and provide supportive services to the homeless.

The district court erred by construing the catchall provision too narrowly. The court reasoned that section 11386(b)(8) did not authorize the challenged conditions—which it described as "[s]ubstantive conditions implicating controversial policy matters"—because they are not "'of the same kind'" as other conditions listed in subsection (b). ER-36. That is incorrect for two reasons.

First, the court was wrong to characterize the conditions listed in section 11386(b) as non-substantive. While recipients must agree to certain reporting and privacy conditions, they must also agree to substantive conditions that implicate policy choices. Recipients must agree, for example, "to ensure, to the maximum extent practicable, that individuals and families experiencing homelessness are involved,

21

through employment, provision of volunteer services, or otherwise, in constructing, rehabilitating, maintaining, and operating facilities for the project and in providing supportive services." 42 U.S.C. § 11386(b)(3). Other conditions require recipients to take certain steps to ensure that children served in the CoC program are enrolled in school, can access services and programs to which they are entitled, and are placed in housing as close as possible to their original school. *Id.* § 11386(b)(4)(D), (7). Considering all conditions required in section 11386(b), the canon of *ejusdem generis*—on which the district court erroneously relied to suggest that the conditions at issue here were unlawful—actually confirms that Congress granted the Secretary broad authority to impose a range of conditions on CoC recipients, from the ministerial to the substantive, so long as they are designed to enhance the program's efficiency and effectiveness.

Second, the court erred in casting the challenged conditions as new substantive requirements "implicating controversial policy matters." ER-36. To the contrary, the challenged funding conditions largely track restrictions on CoC funds put in place by Congress. Under PRWORA, for example, federal public benefits, including the housing

22

and supportive services provided through the CoC program, are only available to U.S. citizens and aliens with a qualifying immigration status.  8 U.S.C. § 1611(a).  HUD merely seeks to ensure compliance with that already-existing restriction by (1) prohibiting state and local governments from using CoC funds to subsidize or promote illegal immigration and (2) requiring recipients (other than charitable non-profits, *see id.* § 1642(d)) to verify that the individuals they serve are in fact eligible to receive federal benefits.

Similarly, HUD requires recipients to agree that they will not use grant funds to fund or promote elective abortions, but the law already prohibits recipients from using CoC funds for that purpose.  The Hyde Amendment, which applies to the 2024 Appropriations Act that appropriated the CoC funds at issue here, provides that "[n]one of the funds appropriated . . . shall be available to pay for an abortion" except in cases of rape or incest or where the mother's life is in danger.  Consolidated Appropriations Act, 2024, Pub. L. No. 118-42, § 202, 138 Stat. 25, 153.

Finally, the condition prohibiting recipients from using CoC funds to promote "gender ideology," as that term is defined in Executive Order

23

14,168, follows from the Housing Assistance Act itself. The Act identifies approved uses for CoC funds to include housing and supportive services such as childcare, job training, food, and mental health services. 42 U.S.C. § 11383. Nowhere does the Act permit a recipient to use grant funds to teach or promote "gender ideology" as defined in Executive Order 14,168—or any other view of gender or sex. The Secretary acted well within the authority granted by section 11386(b)(8) to establish funding conditions that clarify recipients' responsibilities and ensure that CoC funds are used effectively and efficiently.

### C. HUD and DOT did not act arbitrarily or capriciously in imposing the challenged conditions.

For similar reasons, the district court was mistaken to hold that HUD and DOT acted arbitrarily and capriciously. There is nothing arbitrary or capricious about requiring federal grantees to comply with federal antidiscrimination laws or to certify that they are doing so. To the contrary, federal law already prohibits grantees from violating those laws. And as discussed, the limitations on the use of grant funds flow

24

naturally from the purposes of the grants and the need for the grant program to remain effective and efficient, as Congress directed.

Thus, even assuming that the imposition of the conditions is subject to arbitrary-and-capricious review, notwithstanding the absence of any statutory standards governing the choice of conditions, *but cf. Lincoln v. Vigil*, 508 U.S. 182, 192-94 (1993), the conditions are "rational," and the district court erred in "substitut[ing] its judgment" for that of the Departments. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983).

The district court was likewise mistaken to suggest that HUD and DOT had an obligation to provide additional explanation of the conditions. Agencies have not typically been compelled to provide a more extensive explanation when setting funding priorities. Rather, an agency's determination must be upheld if "its path may reasonably be discerned." *City of Los Angeles v. Barr*, 929 F.3d 1163, 1181 (9th Cir. 2019) (quotation marks omitted). Here, the rationale for the conditions is self-evident on their face, reflecting HUD's and DOT's desire to prevent violations of federal anti-discrimination law and to prohibit the

25

use of federal grant funds for certain things that are unlawful or do not advance the interests of the relevant program.

## II. The Remaining Injunction Factors Weigh Against an Injunction.

The district court also erred in concluding that plaintiffs established the remaining preliminary injunction factors. The district court erroneously reasoned that plaintiffs will suffer irreparable harm in the absence of a preliminary injunction because they will be forced to either forgo grant funding or suffer the "constitutional injury" of accepting grant terms Congress has not authorized, "contrary to the Constitution's Separation of Powers doctrine." ER-41-43. But even if plaintiffs are correct on the merits of their statutory arguments, they would not have suffered a constitutional injury. *See Dalton v. Specter*, 511 U.S. 462, 473-74 (1994) ("[C]laims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims."). Further, plaintiffs have not explained, in concrete terms, how accepting the challenged conditions—which largely clarify their existing legal obligations—would harm them while this litigation plays out. That failure dooms their claim for preliminary relief.

26

Conversely, the balance of the equities and public interest weigh strongly in the government's favor.  In concluding otherwise, the district court underappreciated the clear injury to HUD's and DOT's ability to effectuate Executive Branch policy.  The government has a strong interest in ensuring that recipients of federal funds comply with applicable laws and use federal dollars only for approved uses.  The district court erred in finding that the equities and public interest justified plaintiffs' request for preliminary relief.

## CONCLUSION

For the foregoing reasons, the district court's preliminary injunction should be vacated.

Respectfully submitted,

BRETT A. SHUMATE
 *Assistant Attorney General*

DANIEL TENNY

 *s/ Sarah N. Smith*
SARAH N. SMITH
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7533*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(202) 305-0173*
 *Sarah.N.Smith@usdoj.gov*

July 2025

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, appellants state that they know of no related case pending in this Court.

*s/ Sarah N. Smith*

Sarah N. Smith

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Ninth Circuit Rule 32-1(a) because it contains 4,776 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Sarah N. Smith*

_____

Sarah N. Smith

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system.


*s/ Sarah N. Smith*

Sarah N. Smith