**No. 25-3664**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

COUNTY OF KING, et al.,

Plaintiffs-Appellees,

v.

SCOTT TURNER, Secretary, United States Department of Housing and
Urban Development, et al.,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the Western District of Washington

———————————

REPLY BRIEF FOR APPELLANTS

———————————

BRETT A. SHUMATE
  *Assistant Attorney
  General*

DANIEL TENNY
SARAH N. SMITH
  *Attorneys, Appellate Staff
  Civil Division, Room 7533
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-0173*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION .................................................................................1

ARGUMENT .........................................................................................2

I.    Plaintiffs Are Unlikely to Succeed on the Merits ...........................2

      A.    The Anti-Discrimination Conditions Are Lawful Under Title VI ....................................................................... 2

      B.    The Continuum of Care Conditions Are Authorized by the Homeless Assistance Act ................................................ 10

      C.    HUD and DOT Did Not Act Arbitrarily or Capriciously ...... 15

      D.    This Court Should Decline to Address Plaintiffs' Alternative Claims ................................................................ 19

II.    Equitable Considerations Do Not Support the District Court's Injunction ...........................................................................25

III.    The Executive Order Conditions Were Improperly Enjoined .......29

CONCLUSION ...................................................................................31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*Barton v. Office of Navajo,*
  125 F.4th 978 (9th Cir. 2025) ........................................................ 15

*Dalton v. Specter,*
  511 U.S. 462 (1994) ............................................................... 26, 27

*FCC v. Prometheus Radio Project,*
  592 U.S. 414 (2021) ............................................................... 15, 17

*Chapman v. Pier 1 Imps. (U.S.) Inc.,*
  631 F.3d 939 (9th Cir. 2011) ........................................................ 29

*Mayweathers v. Newland,*
  314 F.3d 1062 (9th Cir. 2002) .................................................... 20, 22

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,*
  463 U.S. 29 (1983) .................................................................... 17

*Murphy Co. v. Biden,*
  65 F.4th 1122 (9th Cir. 2023) ....................................................... 27

*National Ass'n of Diversity Officers in Higher Educ. v. Trump,*
  767 F. Supp. 3d 243 (D. Md. 2025) ................................................... 7

*National Fed'n of Indep. Bus. v. Sebelius,*
  567 U.S. 519 (2012) ................................................................... 21

*Nevada v. Skinner,*
  884 F.2d 445 (9th Cir. 1989) ........................................................ 19

*Pennhurst State Sch. & Hosp. v. Halderman,*
  451 U.S. 1 (1981) .................................................................. 19-20

*Raich v. Gonzales,*
  500 F.3d 850 (9th Cir. 2007) ........................................................ 26

*Sierra Club v. Trump,*
  929 F.3d 670 (9th Cir. 2019) ........................................................ 27

*South Dakota v. Dole,*
    483 U.S. 203 (1987) ............................................................ 21

*Trump v. Sierra Club,*
    588 U.S. 930 (2019) ............................................................ 27

*United States v. Greger,*
    716 F.2d 1275 (9th Cir. 1983) .......................................... 14

*Universal Health Servs., Inc. v. United States ex rel. Escobar,*
    579 U.S. 176 (2016) ............................................................ 9

**Statutes:**

Religious Land Use and Institutionalized Persons
    Act of 2000, 42 U.S.C. § 2000cc *et seq* ................................22

8 U.S.C. § 1611(a) ................................................................... 15

42 U.S.C. § 2000d ........................................................... 3, 20, 22

42 U.S.C. § 2000d-1 ................................................................. 3

42 U.S.C. § 2000d-4a(1)(A) ................................................... 22

42 U.S.C. § 11381(2) ............................................................... 12

42 U.S.C. § 11383 ............................................................. 13, 14

42 U.S.C. § 11386(b) .............................................................. 20

42 U.S.C. § 11386(b)(8) ............................................ 10, 11, 24

42 U.S.C. § 12711 .................................................................. 14

**Regulatory Materials:**

24 C.F.R. § 1.4(b)(6) ................................................................ 6

24 C.F.R. § 1.5 .......................................................................... 3

24 C.F.R. § 578.23(c) ................................................................. 24

24 C.F.R. § 578.23(c)(12) ......................................................... 24

49 C.F.R. § 21.5(b)(7) ................................................................ 6

49 C.F.R. § 21.7 ........................................................................ 3

Exec. Order No. 14,168,
    90 Fed. Reg. 8615 (Jan. 30, 2025) ..................................... 16

Exec. Order No. 14,173,
    90 Fed. Reg. 8633, 8634 (Jan. 31, 2025) ............................... 7

Exec. Order No. 14,182,
    90 Fed. Reg. 8751 (Jan. 31, 2025) ..................................... 17

## Other Authorities:

Order Granting Defendants' Motion for a Stay Pending
    Appeal, *National Ass'n of Diversity Officers in Higher
    Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025) ........................ 8

U.S. Citizenship & Immigr. Servs., *SAVE: Register an
    Agency for SAVE*, https://perma.cc/2M9V-C3PM ............................... 13

U.S. Citizenship & Immigr. Servs., *SAVE: Transaction
    Charges*, https://perma.cc/J4QZ-A6DG ........................................ 13, 25

## INTRODUCTION

The district court erred in barring HUD and DOT from imposing and enforcing conditions of funding that (1) require funding recipients to certify their compliance with federal civil rights law and (2) place restrictions on how HUD Continuum of Care (CoC) funds can be used. The conditions were lawfully imposed pursuant to the agencies' statutory authority, and to the extent the agencies were required to explain the conditions, they did so reasonably.

In their response, plaintiffs repeatedly fail to grapple with what the conditions they challenge actually say. They contend that the conditions require them to eliminate lawful diversity, equity, and inclusion (DEI) initiatives, and they insist that through the CoC program conditions, HUD has dramatically remade the CoC program Congress designed. Those arguments contradict the conditions' plain text and ignore funding recipients' existing legal obligations. And to the extent plaintiffs fear that the agencies will, at some time in the future, purport to act pursuant to the challenged conditions in ways that contravene their text and existing federal law, those fears do not support the injunction the district court entered. If plaintiffs think a particular action by HUD or DOT is

unlawful, the proper remedy is to wait for that dispute to materialize, challenge that action, and seek relief from the allegedly unlawful conduct. The district court's preliminary injunction should be vacated.

## ARGUMENT

### I.   Plaintiffs Are Unlikely to Succeed on the Merits

#### A.   The Anti-Discrimination Conditions Are Lawful Under Title VI

The district court enjoined HUD and DOT from imposing or enforcing conditions of funding requiring plaintiffs to (1) certify their compliance with federal anti-discrimination law and (2) acknowledge that such compliance is material to the government's payment decision for purposes of the False Claims Act, because the district court thought the agencies lacked statutory authority to impose those conditions. Plaintiffs do not defend the district court's flawed reasoning on its own terms, and their arguments on appeal are irreconcilable with the plain text of the conditions they challenge.

**1.**  As explained in the government's brief, the district court was clearly incorrect in holding that HUD and DOT lacked "statutory authority" to require plaintiffs to certify their compliance with federal civil rights law as a condition of receiving federal funds. ER-35-39; *see*

2

Gov't Br. 16-19. Title VI requires recipients of federal funding to comply with federal anti-discrimination law and directs federal agencies to issue rules and regulations to ensure recipients' compliance. 42 U.S.C. §§ 2000d, 2000d-1. Pursuant to that congressional directive, HUD and DOT have promulgated regulations requiring grant recipients to certify, as a condition of payment, their compliance with federal anti-discrimination law. 24 C.F.R. § 1.5 (HUD); 49 C.F.R. § 21.7 (DOT). The conditions at issue here, requiring HUD Continuum of Care (CoC) recipients to certify that they do not operate programs that "violate any applicable Federal anti-discrimination laws" and DOT funding recipients to certify that they do not operate any DEI programs that "violate any applicable Federal anti-discrimination laws," are thus plainly authorized by Title VI. ER-14-15 (quotation marks omitted).

Rather than contest any of this, plaintiffs argue that Title VI does not authorize the challenged conditions because, notwithstanding their plain text, plaintiffs understand the conditions to prohibit all DEI programs, whether they violate federal law or not. *See* Pls.' Br. 24-31. That argument cannot be squared with the plain language of the conditions, requiring plaintiffs to certify only that they do not operate

3

programs that "violate any applicable Federal anti-discrimination laws." ER-14-15 (quotation marks omitted).

Plaintiffs attempt to bolster their claim by insisting that the district court "credited the extensive record demonstrating" that the conditions are part of an "overt effort to force federal grant recipients to eliminate all DEI policies and programs." Pls.' Br. 30. That contention misstates the district court's conclusions and the record before the district court, and is beside the point in any event.

As an initial matter, the district court thought that the challenged conditions were imposed without statutory authority because, in the court's view, neither the Homeless Assistance Act nor DOT's grant-authorizing statutes referenced the challenged conditions. ER-35-39; ER-36 (Homeless Assistance Act "does not make direct (or even indirect) reference to any of the new conditions Plaintiffs are challenging in this case"); ER-37 (reasoning that none of DOT's grant-making statutes "relate to the conditions challenged here"). For the reasons explained in the government's opening brief, that conclusion is incorrect. But the district court's holding does not rest on any findings that support

4

plaintiffs' claim that DOT and HUD intend to use the challenged conditions to "eliminate all DEI policies and programs." Pls.' Br. 30.

Plaintiffs' arguments regarding "context" are, in any event, unavailing. Pls.' Br. 25. Plaintiffs argue that provisions of Executive Order 14,173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, a Department of Justice memorandum, and statements by DOT and HUD all reflect the Administration's "policy" and its "legal interpretation that would prohibit DEI in nearly all forms." Pls.' Br. 25-28. But plaintiffs are not being asked to sign on to the Administration's policy preferences, or even the Administration's views about the proper interpretation of federal anti-discrimination laws. Plaintiffs are simply agreeing not to violate the laws currently in place. They may disagree with the government's legal interpretations, and certainly disagree with the government's policy preferences in this area, but that has little to do with the conditions at issue here. Again, those conditions ask funding recipients to certify only that they are in compliance with federal anti-discrimination laws. ER-14-15. Moreover, plaintiffs have not demonstrated that there is any actual disagreement between the agencies and themselves as to how federal anti-discrimination law

5

applies to any particular set of facts. Consequently, even if the Administration's policy views or legal interpretations mattered here, plaintiffs' challenge would still be premature and hypothetical.

Plaintiffs next argue (Pls.' Br. 28-29) that HUD's and DOT's Title VI regulations, which do "not prohibit the consideration of race, color, or national origin" and require "affirmative action" in certain circumstances, are incompatible with the challenged conditions. 24 C.F.R. § 1.4(b)(6) (HUD); 49 C.F.R. § 21.5(b)(7) (DOT). That argument rests, again, on plaintiffs' incorrect belief that the conditions mean something other than what they say.

Still, plaintiffs insist that the conditions will be used to "coerce compliance with a novel and legally unsupported anti-DEI agenda." Pls.' Br. 25. But a funding condition properly authorized by Congress is not itself unlawful because it might be or could be improperly enforced. To the extent plaintiffs fear that HUD or DOT will misinterpret federal law and assert that some lawful program is actually unlawful, they can challenge that action if a concrete dispute arises. But there is no legal basis for enjoining the imposition and enforcement of a lawful condition *in toto* based on plaintiffs' speculative fears regarding future

6

enforcement. Conversely, an injunction against these conditions would not redress any injury that might be caused by some future effort to enforce the anti-discrimination laws against plaintiffs in contexts in which plaintiffs have a good-faith belief that their conduct is lawful. The government could still enforce Title VI in such circumstances, with or without these conditions. And, with or without these conditions, plaintiffs could not be held liable under the False Claims Act unless they knowingly falsely certified their compliance with the law. Gov't Br. 19.

Plaintiffs highlight the error in their position by relying on the concurrences in the Fourth Circuit's stay order without paying attention to the order that court unanimously issued. Pls.' Br. 29. That case concerned an Executive Order requiring federal agencies to "'include in every contract or grant award' a certification, enforceable through the False Claims Act, that the contractor and grantee 'does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws.'" *National Ass'n of Diversity Officers in Higher Educ. v. Trump*, 767 F. Supp. 3d 243, 257 (D. Md. 2025) (emphasis omitted) (quoting Exec. Order No. 14,173, 90 Fed. Reg. 8633, 8634 (Jan. 31, 2025)). The district court enjoined application of that provision, but

7

the Fourth Circuit granted a stay pending appeal. *See* Order Granting Defendants' Motion for a Stay Pending Appeal, *National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025). Judge Harris's concurrence expressed concerns that "[a]gency enforcement actions that go beyond the Orders' narrow scope may well raise serious First Amendment and Due Process concerns," but HUD and DOT have not exceeded the Executive Order's narrow scope here, but instead have applied it according to its terms. *Id.* at 7 (Harris, J., concurring). The certifications at issue here are materially identical to the ones contemplated by the Executive Order, which the Fourth Circuit unanimously allowed to take effect. Plaintiffs' contrary suggestion once again cannot be reconciled with the plain text of the conditions they challenge.

**2.** Plaintiffs fare no better in their challenge to conditions requiring CoC and DOT funding recipients to acknowledge that their compliance with federal civil rights law is material to the government's payment decision for purposes of the False Claims Act. As explained in the government's opening brief, these conditions simply ask plaintiffs to acknowledge that their compliance with federal civil rights law is

"capable of influencing" the government's payment decision. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193 (2016) (quotation marks omitted); Gov't Br. 19.

Plaintiffs are wrong to suggest that the certification unlawfully lowers the government's burden under the False Claims Act. Pls' Br. 30. Whether a false statement is material under the False Claims Act is a holistic inquiry, and the government's "decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." *Universal Health Servs., Inc.*, 579 U.S. at 194. Thus, plaintiffs' certification would be evidence of materiality, and reasonably so: the condition puts plaintiffs on notice that "for some special reason [the representation] is likely to induce the [government] to manifest [its] assent to the transaction." *Id.* at 193 (quotation marks omitted) (first alteration in the original). But the condition does not lower the standard required under the False Claims Act, and plaintiffs would remain free to challenge materiality, and the relevance of their certification, if any False Claims Act suit were ultimately filed.

9

**B.    The Continuum of Care Conditions Are Authorized by the Homeless Assistance Act**

The district court also enjoined HUD from imposing or enforcing several conditions that restrict how recipients may use CoC grant funds. The enjoined conditions require CoC recipients to agree (1) not to use grant funds to promote "gender ideology," as defined in Executive Order 14,168; (2) not to use grant funds to pay for or promote elective abortions; (3) in the case of state and local government recipients, not to use grant funds to subsidize or promote illegal immigration; and (4) to use SAVE or an equivalent verification system to ensure that no federal benefit is provided to an ineligible alien, subject to the exceptions provided by the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA). ER-14. As explained in the government's opening brief, these conditions largely track existing restrictions Congress has placed on CoC funds and are authorized by 42 U.S.C. § 11386(b)(8), which empowers HUD to establish "terms and conditions . . . to carry out [the CoC program] in an effective and efficient manner." 42 U.S.C. § 11386(b)(8); Gov't Br. 20-24.

Plaintiffs' arguments in response misconstrue the government's position and misunderstand the challenged conditions. Plaintiffs

incorrectly assert that HUD has claimed "unlimited power to condition funds" and that accepting its argument would "all but erase" Congress's "role in setting the purposes to be advanced by CoC spending." Pls.' Br. 32, 34. Not so. As the government explained in its opening brief, section 11386(b)(8) authorizes HUD to establish conditions to "carry out [the CoC program] in an effective and efficient manner." 42 U.S.C. § 11386(b)(8). Conditions established pursuant to section 11386(b)(8) must carry out the CoC program that Congress designed and ensure that federal funds are used effectively and efficiently. The provision does not "grant[] HUD unlimited power to condition funds," and the government has not argued otherwise. Pls.' Br. 32. Rather, HUD's conditions must be tailored to ensuring that federal funds are used effectively and efficiently. Prohibiting funds from being used for extraneous, non-housing purposes at odds with Congressional directives is at the heartland of HUD's authority.

The CoC funding conditions hew closely to existing restrictions on CoC funds. Plaintiffs thus err in suggesting that through the challenged conditions, HUD has "unilaterally alter[ed]" the CoC program. Pls.' Br. 34 (quotation marks omitted). To the contrary, by clarifying that CoC

11

funds cannot be used to promote "gender ideology" or fund elective abortions, the conditions further a key purpose of the Homeless Assistance Act: to "provide funding . . . to quickly rehouse homeless individuals and families." 42 U.S.C. § 11381(2). It is unclear why a grant recipient would think that it was entitled to use housing funds for those unauthorized purposes even without these conditions, but there is nothing unlawful about making it explicit. And the prohibition on serving ineligible aliens is tautologically proper, as ineligible aliens are by definition not entitled to benefits from the program.

Plaintiffs argue that the challenged conditions limit their ability to provide services authorized under the Homeless Assistance Act and "exclude vulnerable individuals from receiving" those services, but they do not explain how that it so. Pls.' Br. 36. While CoC recipients may not use federal funds to promote "gender ideology"—a particular view of sex and gender as described in Executive Order 14,168—the challenged conditions do not prohibit recipients from serving trans-identifying individuals. And while it is true that the challenged conditions prohibit recipients from promoting elective abortions, plaintiffs do not explain

12

how they would use CoC funds to promote elective abortions consistent with the Act.  *See* 42 U.S.C. § 11383 (listing eligible uses of CoC funds).

Plaintiffs next argue, with respect to the immigration-verification and abortion conditions, that Congress has "declined to restrict" CoC funds "in the way HUD seeks to accomplish."  Pls.' Br. 37.  But plaintiffs admit that under PRWORA, CoC funds may not be used to serve ineligible aliens, and they acknowledge that they must verify the immigration status of the people they serve.[1]  Pls.' Br. 37-38.  They also do not deny that the Hyde Amendment prohibits the use of CoC funds to pay for elective abortions.  Pls.' Br. 38.  These admissions underscore the degree to which plaintiffs err in insisting that the challenged conditions would transform the CoC program by inserting the agency's "views of hotly contested policy issues on which Congress has not spoken."  Pls.'

---

[1] Plaintiffs are also plainly wrong to insist that because "many of the Local Governments lack access to the SAVE system," they would have to bear the cost of establishing an alternative immigration verification system.  Pls.' Br. 38.  Local governments may gain access to SAVE by submitting a short application to U.S. Citizenship and Immigration Services, which operates SAVE.  U.S. Citizenship & Immigr. Servs., *SAVE: Register an Agency for SAVE*, https://perma.cc/2M9V-C3PM. Effective April 1, 2025, local government agencies may use SAVE at no cost.  U.S. Citizenship & Immigr. Servs., *SAVE: Transaction Charges*, https://perma.cc/J4QZ-A6DG.

13

Br. 34. To the contrary, as plaintiffs' admissions reflect, these conditions largely follow existing restrictions on CoC funds put in place by Congress. And they also reflect the common-sense point that housing funds should not be used for these extraneous purposes.

The gender ideology condition is lawful for similar reasons: nothing in the Homeless Assistance Act would permit a recipient to use grant funding to "promote" a particular view of sex or gender. Gov't Br. 23-24; 42 U.S.C. § 11383 (listing eligible uses for CoC funds). Plaintiffs do not argue otherwise. *See* Pls.' Br. 38-39.

Finally, plaintiffs argue for the first time on appeal that the challenged conditions are unlawful because 42 U.S.C. § 12711 prohibits HUD from conditioning federal funding based on a state or local government's "adoption, continuation, or discontinuation" of a "public policy, regulation, or law" that is lawfully adopted by the jurisdiction and not in violation of federal law. 42 U.S.C. § 12711; Pls.' Br. 32-33. Plaintiffs forfeited this argument by failing to raise it in district court, *United States v. Greger*, 716 F.2d 1275, 1277 (9th Cir. 1983), but it is meritless in any event. Plaintiffs claim that the CoC conditions "attempt to force local jurisdictions to abandon lawful policies . . . or else forfeit

14

CoC funds," Pls.' Br. 33, but they point to no local policy, law, or regulation that requires them to use *federal funds* to promote gender ideology, to promote or fund elective abortions, to subsidize or promote illegal immigration, or to provide ineligible aliens with federal public benefits (which would violate federal law, *see* 8 U.S.C. § 1611(a)).

## C. HUD and DOT Did Not Act Arbitrarily or Capriciously

The district court also erred in concluding that plaintiffs were likely to succeed in showing that HUD and DOT acted arbitrarily and capriciously in imposing the challenged conditions. Assuming that arbitrary-and-capricious review applies in this context, the agencies acted well "within a zone of reasonableness" in imposing conditions of funding that (1) require federal funding recipients to certify that they comply with federal civil rights law, as required by Title VI, and (2) track existing restrictions on the use of CoC funds. *Barton v. Office of Navajo*, 125 F.4th 978, 982 (9th Cir. 2025) (quotation marks omitted).

Similarly, assuming that the agencies were required to explain the conditions, HUD and DOT did so "reasonably." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Plaintiffs acknowledge that HUD explained its immigration-related conditions in an April 4 letter to

funding recipients. Pls.' Br. 41; *see* 7-SER-1669 (letter to HUD grantees explaining that PRWORA restricts certain federal benefits, "including many forms of assistance provided under HUD programs," to U.S. citizens and eligible aliens and explaining that HUD leadership is taking steps to ensure its programs comply). While plaintiffs suggest that HUD's explanation was provided "after the fact," Pls.' Br. 41, the letter was sent while HUD was in the process of issuing its updated grant agreements. ER-93 (Amended Complaint) (HUD presented plaintiffs with CoC grant agreements containing challenged conditions "[i]n or around March and April of 2025"). Plaintiffs also acknowledge that DOT explained its discrimination conditions in a letter sent by Secretary Duffy. Pls.' Br. 42; *see* 9-SER-2054 (letter to DOT funding recipients explaining that the Secretary is "responsible for ensuring recipients of DOT financial assistance are aware of and comply with all applicable legal obligations," including federal laws and regulations prohibiting discrimination). And the conditions prohibiting CoC funds from being used to promote gender ideology and elective abortion themselves reference Executive Orders, which in turn provide policy justifications. ER-14; *see* Exec. Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 30, 2025);

16

Exec. Order No. 14,182, 90 Fed. Reg. 8751 (Jan. 31, 2025). Under the APA's "deferential arbitrary-and-capricious standard," these explanations are sufficient. *Prometheus Radio Project*, 592 U.S. at 417; *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43 (1983) (courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned" (quotation marks omitted)). At the very least, this Court should find that the district court clearly erred in holding that the challenged conditions were "not . . . explained at all." ER-40. And plaintiffs do not explain what purpose would be served by requiring more explanation of conditions whose justification is clear on their face.

Plaintiffs incorrectly argue that the agencies' explanations are insufficient. They fault HUD for not considering the "programmatic impacts" of verifying beneficiaries' immigration status using SAVE but their argument ignores that federal law prohibits ineligible aliens from receiving CoC program benefits and, as plaintiffs themselves admit, CoC grantees are already required to verify beneficiaries' immigration or citizenship status. Pls.' Br. 37-38, 41-42. Plaintiffs also insist that DOT's explanation of its discrimination conditions is inadequate, claiming that

17

DOT's letter "cites no authority supporting" the conditions. Pls.' Br. 42. In fact, the letter cites decisions of the Supreme Court, as well as Title VI, Title VII, and the non-discrimination clauses of the Federal Aid Highway Act of 1973, the Airport and Airway Improvement Act of 1982, and Title IX. 9-SER-2054-55. Plaintiffs also marshal arguments that seem to rest on their mistaken belief that DOT requires recipients to certify that they do not operate any DEI programs, regardless of whether they violate federal law. *See* Pls.' Br. 42 (arguing that the DOT letter, which explains that the agency must ensure that there is no prohibited discrimination in the programs and activities it funds, is "inconsistent with the Condition, which apparently requires the recipient to certify it does not operate *any* DEI program DOT deems prohibited"); Pls.' Br. 43 (faulting DOT for not explaining how local governments could comply with the discrimination condition and "existing statutory and regulatory requirements"). As explained above, plaintiffs' understanding is incorrect and is contradicted by the condition's plain language. But even if the agencies' explanations were inadequate, the proper remedy in that case would be to remand for further explanation, not to enjoin the conditions altogether.

### D. This Court Should Decline to Address Plaintiffs' Alternative Claims

Plaintiffs also ask this Court to affirm on the alternate grounds that they have demonstrated a likelihood of success on their Spending Clause and procedural APA claims. Pls.' Br. 44-48. Because the district court expressly declined to reach those claims, *see* ER-40 n.19, this Court should decline to address them in the first instance. If the Court nonetheless considers these issues, it should hold that plaintiffs have not established a likelihood of success on these claims.

**1.** Plaintiffs argue that the challenged conditions exceed Congress's power under the Spending Clause because they are ambiguous, not germane to the programs at issue, and coercive. Pls.' Br. 44-47. Plaintiffs are wrong on all counts.

First, plaintiffs confuse the question whether the federal government has imposed conditions "unambiguously" with whether the conditions are themselves unambiguous. The Spending Clause requires that the federal government's "intent to condition funds on a particular action . . . be authoritative and unambiguous," so recipients can "'exercise their choice knowingly.'" *Nevada v. Skinner*, 884 F.2d 445, 447 (9th Cir. 1989) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1,

19

17 (1981)).   But the Spending Clause does not require the federal government to "list every factual instance in which a [funding recipient] will fail to comply with a condition" because requiring "[s]uch specificity would prove too onerous, and perhaps, impossible." *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002).   Indeed, the conditions themselves may be "largely indeterminate," so long as "the existence of the condition itself—in exchange for the receipt of federal funds—" is made "explicitly obvious." *Id.* (quotation marks omitted).

The challenged conditions readily satisfy this test.   Plaintiffs have identified no ambiguity about whether they are subject to the conditions at issue here; that is why they filed this lawsuit.   And although the agencies' clear enunciation of the conditions is sufficient in itself, the obligation to follow them is also clear from the underlying statutes.   Title VI clearly provides that recipients of federal assistance must comply with federal civil rights law.   42 U.S.C. § 2000d.   And the Homeless Assistance Act expressly states that funding recipients must agree to certain terms to receive CoC funds, including terms and conditions that HUD may establish to carry out the program effectively and efficiently.   *Id.* § 11386(b).

20

Plaintiffs are also incorrect in arguing that the challenged conditions violate the Spending Clause because they are "entirely unrelated to homelessness and transportation funding." Pls.' Br. 45. The Supreme Court "ha[s] suggested (without significant elaboration) that conditions on federal grants *might* be illegitimate if they are unrelated to the federal interest in particular national projects or programs." *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (emphasis added) (quotation marks omitted).

The CoC funding conditions, which limit how recipients can use CoC funds, readily satisfy the Spending Clause. *National Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 580 (2012) (Congress may condition the receipt of funds on the recipient's compliance "with restrictions on the use of those funds, because that is the means by which Congress ensures that the funds are spent according to its view of the 'general Welfare.'"). Plaintiffs' contrary argument, which suggests that they have a constitutional right to spend housing funds on abortions or to promote their own view of gender ideology, is difficult to fathom. The discrimination conditions also satisfy the Spending Clause's "low-threshold relatedness test": by requiring recipients to certify that they do

21

not operate programs that violate federal civil rights laws, the conditions further the federal government's interest in ensuring that it does not fund programs or activities that unlawfully discriminate. *Mayweathers*, 314 F.3d at 1067 (denying a germaneness challenge to the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.*, because "Congress has a strong interest in making certain that federal funds do not subsidize conduct that infringes individual liberties").

Finally, plaintiffs err in suggesting that DOT's discrimination condition is unconstitutionally coercive. Pls.' Br. 46. Again, plaintiffs' arguments rely on their misunderstanding of the condition as requiring them to "eliminate *all* forms of DEI," regardless of whether the program in question violates federal law. *Id.* Moreover, and *contra* plaintiffs, *id.*, the challenged conditions do not compel plaintiffs to "adopt policies" in exchange for federal funds. Plaintiffs are simply asked to certify that they do not operate programs that violate federal civil rights law, as Title VI already requires. 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin" be subjected to discrimination "under any program or activity receiving Federal financial assistance."); *see also id.* § 2000d-4a(1)(A) (for purposes of Title VI,

22

"program or activity" means "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government").

In all these challenges to the discrimination condition, it is not clear whether plaintiffs mean to suggest that Title VI is unconstitutional, or that the discrimination condition here is materially different from Title VI for Spending Clause purposes. In any event, neither position is tenable.

**2.** Plaintiffs also argue that HUD was not entitled to impose the challenged CoC conditions because they were not identified in the original notice of funding availability. Pls.' Br. 47-48. As an initial matter, this challenge is particularly ill suited to resolution by this Court in the first instance. The district court did not premise its preliminary injunction on any procedural violation, did not consider whether the equities would support a broad injunction if the only defect was procedural, and did not tailor its injunction to ensure that the government could impose the conditions if any perceived procedural defect was resolved. Even if plaintiffs were correct on the merits of this claim, it could therefore not support the injunction that was issued.

23

In any event, plaintiffs' procedural objection is flawed. The governing statute provides that funding recipients must "comply with such other terms and conditions as the Secretary may establish to carry out this part in an effective and efficient manner." 42 U.S.C. § 11386(b)(8). The statute thus does not limit the Secretary to conditions set forth in a notice of funding availability, and it would be illogical to do so: if, for example, a particular grant application raises an issue that the Secretary believes can be resolved by issuing the grant but imposing a condition, there is no reason to require the Secretary to deny the grant outright.

Plaintiffs point not to the statute but rather to a HUD regulation, 24 C.F.R. § 578.23(c), which lists terms and conditions to which CoC funding recipients must agree. Section 578.23(c)(12) states that CoC recipients must agree to "comply with such other terms and conditions as HUD may establish" in its notice of funding availability. 24 C.F.R. § 578.23(c)(12). HUD ordinarily sets out terms and conditions in a notice of funding availability, and it was thus natural to specify that funding recipients must comply with them. But this provision does not carry the negative implication that grantees are free to ignore conditions that are

24

set out at other times or in other places.  To reach that implication, while quoting the provision plaintiffs insert the phrase "only if," Pls.' Br. 47, which does not appear in the regulation itself.  By its plain terms, the regulation simply requires funding recipients to agree to additional terms and conditions established in the notice of funding availability; it does not state that recipients need not comply with other terms imposed by HUD.

## II. Equitable Considerations Do Not Support the District Court's Injunction

Plaintiffs have not demonstrated that they would suffer any concrete irreparable harm from accepting the challenged conditions. They contend that the CoC immigration condition would require them to use "local resources" to access and use the SAVE system, Pls.' Br. 54-55, but as local governments, plaintiffs may use SAVE at no cost.  U.S. Citizenship & Immigr. Servs., *SAVE: Transaction Charges*, *supra*. Plaintiffs also argue that they are harmed by the discrimination conditions because "it is unclear which DEI policies the Federal Agencies consider unlawful," and so plaintiffs must eliminate all DEI initiatives. Pls.' Br. 55.  Again, plaintiffs misunderstand the discrimination conditions, which require plaintiffs only to certify their compliance with

federal anti-discrimination law, not with the agencies' interpretation of the law. And plaintiffs already have an obligation to follow those federal laws, separate from the conditions here.

Plaintiffs attempt to bolster their claims of irreparable harm by claiming the conditions are unconstitutional. Pls.' Br. 50-51. But as the government explained in its opening brief, even if plaintiffs are correct that HUD and DOT lacked statutory authority to impose the challenged conditions, the agencies' statutory violations would not amount to violations of the Constitution. Gov't Br. 26; *see Dalton v. Specter*, 511 U.S. 462, 473-74 (1994).[2] And for the reasons explained *supra* pp. 19-23, plaintiffs have not shown that the challenged conditions likely violate the Spending Clause.

Plaintiffs' attempts to distinguish this case from *Dalton* fail. In *Dalton*, the Supreme Court explained that the court of appeals erred in

---

[2] Plaintiffs contend that the government did not raise this argument in district court, Pls.' Br. 50, but the government did argue that plaintiffs have failed to demonstrate that the challenged conditions "would in fact deprive Plaintiffs of their constitutional rights," ER-42, and is entitled to flesh out that argument here. In any event, even if the argument were new, this Court could properly consider it because "the issue presented is a pure question of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *Raich v. Gonzales*, 500 F.3d 850, 868 (9th Cir. 2007).

26

concluding that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." 511 U.S. at 471. The district court made precisely the same error here. *See* ER-41 (reasoning that "being forced to accept conditions that are contrary" to statute "is a constitutional injury"). And *contra* Pls.' Br. 52-53, *Murphy Co. v. Biden*, 65 F.4th 1122 (9th Cir. 2023), does not indicate otherwise. This Court in *Murphy* held that the plaintiff company's *ultra vires* claim, *i.e.*, its claim that the President acted in excess of statutory authority, was justiciable. *Id.* at 1131. And while the Court suggested in dicta that the "core" of the plaintiff company's claim, "that the President violated separation of powers[,] . . . *could* be considered constitutional," the Court did not so hold. *Id.* at 1130 (emphasis added).[3] In short, plaintiffs have not established that they will

---

[3] Further, in reasoning that this Court "tak[es] an expansive view of the constitutional category of claims highlighted in *Dalton*," *Murphy*, 65 F.4th at 1130, *Murphy* relied on *Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019), but the Supreme Court has cast doubt on that decision. In *Sierra Club*, this Court denied the government's motion for a stay, reasoning that the plaintiffs had a constitutional cause of action to challenge the President's reappropriation of defense funds for border wall construction. *Id.* at 696-97. The Supreme Court subsequently granted a stay, concluding that the government had shown it was likely to succeed in showing that "plaintiffs have no cause of action." *Trump v. Sierra Club*, 588 U.S. 930, 930 (2019).

suffer any irreparable harm—constitutional or otherwise—from accepting the challenged conditions while this litigation plays out.

On the other side of the balance, the district court's injunction harms the government and the public by limiting the agencies' lawful ability to control how federal funds are spent. The government has a strong interest in ensuring that federal dollars do not subsidize unlawful discrimination, and HUD has a strong interest in ensuring that CoC grant funds are used for approved purposes and serve approved beneficiaries. The district court's injunction preventing the government from putting lawful and reasonable restrictions on the funds it awards thus inflicts more than a mere "institutional" injury to separation-of-powers principles, *contra* Pls.' Br. 58 (quotation marks omitted).

Plaintiffs argue that there is "no public interest in the perpetuation of unlawful agency action," Pls.' Br. 58 (quotation marks omitted), but that argument assumes incorrectly that plaintiffs are right on the merits. Plaintiffs further argue that their homelessness and transportation services will be "significantly disrupted" if the preliminary injunction is lifted. Pls.' Br. 59. That is only so if plaintiffs decide to reject the

28

challenged conditions which, as explained above, are lawful and impose no concrete or constitutional injury on plaintiffs.

## III.   The Executive Order Conditions Were Improperly Enjoined

Finally, plaintiffs argue that the government has forfeited any challenge to "EO Conditions" imposed by HUD and DOT.  Pls.' Br. 60. The district court offered no analysis or discussion of these conditions in its opinion, and the district court declined to reach the arguments plaintiffs made challenging these conditions.  *See* FER-52 (arguing that the EO conditions are unconstitutionally vague); FER-12 (arguing that the DOT EO condition violates the Spending Clause because it is ambiguous).  And as a practical matter, the inclusion of these conditions adds nothing to the district court's injunction, which is why the government did not address them in its opening brief.  For that reason, this Court need not consider the EO conditions separately.  But should the Court do so, it should vacate the injunction with respect to the EO conditions, because plaintiffs lack standing, and "Article III standing is not subject to waiver." *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011).

The CoC "EO Condition" imposes no obligations and thus no injury on plaintiffs. The CoC agreements state that the grant agreement, the recipient's use of grant funds, and the recipient's operation of CoC projects are "governed by" (1) the 2024 Consolidated Appropriations Act; (2) the Homeless Assistance Act; (3) HUD's CoC program regulations; (4) the relevant notices of funding availability; (5) "all current Executive Orders," and (6) the recipient's application submissions. *See, e.g.*, 7-SER-1493. This section of the agreement is informational and does not require anything of recipients. It consequently imposes no Article III injury.

Similarly, the DOT "EO Condition" does not injure plaintiffs. The various DOT agreements ask funding recipients to agree to "comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds." 3-SER-610 (FAA); 2-SER-341 (FRA); 2-SER-373 (DOT); 2-SER-484 (FHWA); *see also* 8-SER-1841, 1849 (FTA) (requiring the recipient to agree "to comply with all applicable federal requirements" which includes "applicable . . . executive order[s]"). But as plaintiffs concede, executive orders do not "place[] any direct requirements on grant recipients," and executive orders can "only impose

30

requirements on executive agencies, officers, and employees." FER-52. The DOT EO condition consequently does not impose any requirements on plaintiffs, and they therefore suffer no Article III injury traceable to that condition.

## CONCLUSION

For the foregoing reasons and those in the government's opening brief, the district court's preliminary injunction should be vacated.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*
DANIEL TENNY

*s/Sarah N. Smith*
SARAH N. SMITH
*Attorneys, Appellate Staff*
*Civil Division, Room 7533*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-0173*
*Sarah.N.Smith@usdoj.gov*

September 2025

31

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Ninth Circuit Rule 32-1(b) because it contains 6,047 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Sarah N. Smith*

_____

Sarah N. Smith

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system.

*s/ Sarah N. Smith*

_____

Sarah N. Smith