No. 25-3664

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

COUNTY OF KING, et al.,

Plaintiffs-Appellees,

v.

SCOTT TURNER, Secretary, United States Department of Housing and
Urban Development, et al.,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the Western District of Washington

———————————

FURTHER EXCERPTS OF RECORD

———————————

BRETT A. SHUMATE
  *Assistant Attorney
  General*

DANIEL TENNY
SARAH N. SMITH
  *Attorneys, Appellate Staff
  Civil Division, Room 7533
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-0173*

# TABLE OF CONTENTS

**Page**

Plaintiffs' Second Motion for Temporary Restraining Order and
Preliminary Injunction, Dkt. No. 72 ......................................... FER-3

Plaintiffs' Motion for Temporary Restraining Order,
Dkt. No. 5 .............................................................................. FER-33

THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR.
COUNTY; PIERCE COUNTY;
SNOHOMISH COUNTY; CITY AND
COUNTY OF SAN FRANCISCO;
COUNTY OF SANTA CLARA; CITY
OF BOSTON; CITY OF COLUMBUS;
CITY OF NEW YORK; CITY &
COUNTY OF DENVER;
METROPOLITAN GOVERNMENT OF
NASHVILLE & DAVIDSON COUNTY;
PIMA COUNTY; COUNTY OF
SONOMA; CITY OF BEND; CITY OF
CAMBRIDGE; CITY OF CHICAGO;
CITY OF CULVER CITY; CITY OF
MINNEAPOLIS; CITY OF PASADENA;
CITY OF PITTSBURGH; CITY OF
PORTLAND; CITY OF SAN JOSÉ;
CITY OF SANTA MONICA; CITY OF
TUCSON; CITY OF WILSONVILLE;
CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY; INTERCITY
TRANSIT; SAN FRANCISCO COUNTY
TRANSPORTATION AUTHORITY;
TREASURE ISLAND MOBILITY
MANAGEMENT AGENCY; PORT OF
SEATTLE; KING COUNTY REGIONAL
HOMELESSNESS AUTHORITY; and
SANTA MONICA HOUSING
AUTHORITY,

                         Plaintiffs,

vs.

No. 2:25-cv-00814-BJR

PLAINTIFFS' SECOND MOTION
FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION
No.  2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1  SCOTT TURNER in his official capacity
   as Secretary of the U.S. Department of
2  Housing and Urban Development; the
   U.S. DEPARTMENT OF HOUSING
3  AND URBAN DEVELOPMENT; SEAN
   DUFFY in his official capacity as
4  Secretary of the U.S. Department of
   Transportation; the U.S. DEPARTMENT
5  OF TRANSPORTATION; TARIQ
   BOKHARI in his official capacity as
6  acting Administrator of the Federal
   Transit Administration; the FEDERAL
7  TRANSIT ADMINISTRATION;
   GLORIA M. SHEPHERD in her official
8  capacity as acting Director of the Federal
   Highway Administration; the FEDERAL
9  HIGHWAY ADMINISTRATION;
   CHRIS ROCHELEAU in his official
10 capacity as acting Administrator of the
   Federal Aviation Administration; the
11 FEDERAL AVIATION
   ADMINISTRATION; DREW FEELEY in
12 his official capacity as acting
   Administrator of the Federal Railroad
13 Administration; and the FEDERAL
   RAILROAD ADMINISTRATION,
14
15
16                Defendants.
17
18
19
20
21
22
23
24
25
26
27

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION
No.  2:25-cv-00814-BJR

FER-4

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................1

II.     STATEMENT OF FACTS .....................................................................2

III.    ARGUMENT ........................................................................................4

        A.    Legal Standard .......................................................................... 4

        B.    Plaintiffs Are Likely to Succeed on the Merits........................... 5

              1.    Congress Has Not Authorized the DOT Grant Conditions......................... 5

              2.    The Grant Conditions Violate the Spending Clause .................................. 7

              3.    The DOT Immigration Enforcement Condition Violates the
                    Tenth Amendment ............................................................... 9

              4.    Imposing the Grant Conditions Violates the APA.................................... 10

        C.    Plaintiffs Will Suffer Irreparable Harm If the Conditions Are Not
              Enjoined ................................................................................. 12

        D.    The Equities Weigh in Plaintiffs' Favor ................................... 15

IV.     CONCLUSION....................................................................................15

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – i
No.  2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-5

# I.    INTRODUCTION

The Trump administration's efforts to add unconstitutional and unlawful conditions to grant agreements are a moving target. Plaintiffs previously sought relief as to the U.S. Department of Housing and Urban Development's (HUD's) attempt to impose unlawful conditions on HUD Continuum of Care (CoC) grants and the U.S. Department of Transportation's (DOT's) attempt to impose similarly unlawful conditions on Federal Transit Administration (FTA) grants. This Court rightly concluded that emergency and preliminary injunctive relief was appropriate to prevent harm from these unlawful acts. But things have gone from bad to worse. In a letter to all DOT grant recipients, Secretary Duffy stated DOT intends to impose the unlawful Discrimination Condition, Immigration Enforcement Condition, and EO Condition on all DOT grants through its operating administrations[1] (DOT OAs). That has now happened. Substantively identical conditions have appeared in general terms and conditions, master grant agreements, and/or assurances for the Federal Highway Administration (FHWA), Federal Aviation Administration (FAA), and Federal Railroad Administration (FRA). Plaintiffs' DOT grants—totaling *billions of dollars* and a significant percentage of their budgets—are used to fund critical infrastructure and transportation services. Some Plaintiffs have been presented with agreements with deadlines that already passed, while others must be signed *as early as May 27*. Thus, a larger group of local government Plaintiffs are forced to return to this Court to seek relief again—on indistinguishable facts and against additional federal DOT Defendants—to avoid devastating consequences to their jurisdictions and residents while this litigation proceeds. Certain Plaintiffs seek a temporary restraining order (TRO) and all Plaintiffs with DOT grants seek a preliminary injunction (PI) prohibiting DOT from

---

[1] Congress and DOT refer to DOT administrations—including FTA, FHWA, FAA and FRA—as "operating administrations." 49 U.S.C. § 102; 49 C.F.R. § 1.2.

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 1
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

imposing or enforcing these unlawful grant conditions during the pendency of this case.

In addition, the new jurisdictions that have joined this litigation seek the same relief provided to the original Plaintiffs regarding HUD's unlawful CoC Grant Conditions. This Court has already ruled Plaintiffs are likely to succeed on the merits of their challenge to those conditions, and the harms suffered by the new Plaintiffs mirror the harms this Court has already found sufficient to warrant preliminary relief. Accordingly, the order enjoining the CoC Grant Conditions should be extended to these new jurisdictions as well.

## II.     STATEMENT OF FACTS

As detailed in Plaintiffs' prior TRO and PI motion, HUD and FTA placed a series of anti-DEI and anti-immigration conditions on CoC and FTA grants. Dkt. # 5 at 5–13. DOT has now followed suit—and doubled down—by imposing similar conditions on *all* of its grant programs.

Last month, Secretary Duffy issued a letter (Duffy Letter) to "All Recipients" of DOT grants announcing DOT's policy to impose anti-DEI and immigration enforcement conditions on all DOT grants. Dkt. # 6, Ex. D. The Duffy Letter asserts recipients' "legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law." *Id*. at 2. It makes clear DOT re-interprets federal nondiscrimination law to prohibit "any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called [DEI] goals." *Id*.

As foreshadowed by this Letter, DOT and its OAs recently have attached substantially similar conditions to DOT grants. First, they imposed a discrimination condition (DOT Discrimination Condition) that requires the recipient, "[p]ursuant to Section (3)(b)(iv), Executive

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 2
No.  2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-7

Order 14173" to agree that "its compliance in all respects with all applicable Federal antidiscrimination laws is material to the government's payment decisions for purposes of [the False Claims Act (FCA)]," and "it does not operate any programs promoting [DEI] initiatives that violate any applicable Federal anti-discrimination laws." *E.g.,* Dkt. # 6, Ex. B-1 (FTA); T. Davis Decl., Ex. B (FHWA); Parrot Decl., Ex. B (FAA); Sexton Decl., Exs. B (FRA), D (DOT SMART). Just this week, Deputy U.S. Attorney General Blanche announced a new initiative to utilize the FCA against entities that engage in purportedly "unlawful discrimination," such as allowing individuals to use the bathroom that aligns with their gender identity. Dkt. # 65, Ex. A. Plaintiffs disagree this violates federal nondiscrimination law, but Blanche's memo calls for each U.S. Attorney's Office to assign an attorney to bring claims against entities that have such (and similar) policies, and "strongly encourages" private parties to do the same. *Id.*

Second, they imposed an immigration enforcement condition (DOT Immigration Enforcement Condition) that requires the recipient to "cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law." *E.g.,* Dkt. # 6, Ex. B-1 (FTA); T. Davis Decl., Ex. B (FHWA); Parrot Decl., Ex. B (FAA); Sexton Decl., Exs. B (FRA), D (DOT).[2]

Third, they imposed a condition in grant agreements and in the FAA Grant Assurances

---

[2] A district court preliminarily enjoined the government from "directly or indirectly taking any action to withhold, freeze, or condition federal funds from" sixteen cities and counties—including Plaintiffs King County, Santa Clara, San Francisco, Minneapolis, San José, and Portland—on the basis of Section 2(a)(ii) of the President's Immigration Order. *City & Cnty. of San Francisco v. Trump,* No. 3:25-cv-01350-WHO, 2025 WL 1186310, at *3 & n.2 (N.D. Cal. Apr. 24, 2025). Those Plaintiffs do not seek to duplicate the relief sought there. That case raises facial challenges to the Immigration Order, prohibiting funding of "sanctuary jurisdictions"; Plaintiffs here challenge HUD's and DOT's actions attaching new unlawful conditions to the grants at issue.

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 3
No.  2:25-cv-00814-BJR

FER-8

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(DOT EO Condition) that requires the recipient to "comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this [grant]."[3] *E.g.*, Dkt. # 6, Ex. B-1 (FTA); T. Davis Decl., Ex. B (FHWA); Parrot Decl., Ex. B (FAA); Sexton Decl., Exs. C (FRA), D (DOT).

Pursuant to the statements in the Duffy Letter, these conditions (collectively, the "DOT Grant Conditions") apparently will appear in all DOT grants going forward and be imposed on Plaintiffs as direct and indirect recipients of DOT funding. *See* 2 C.F.R. § 200.101(b)(1).

Plaintiffs face imminent harm from imposition of these new conditions on HUD CoC and DOT grants. They have an urgent need to access CoC funds because loss of those funds puts thousands of residents at risk of homelessness and strains community resources. *E.g.*, Verlinich Decl. (Santa Monica Housing Authority) ¶ 20; Semonoff Decl. (Cambridge) ¶ 30–31. Plaintiffs need to access their DOT grants to provide critical public services, including operating transit, improving the safety of roads and bridges, and maintaining the integrity of airport infrastructure. *E.g.*, Lewis Decl. (Wilsonville) ¶ 5; Freitas Decl. (Santa Clara) ¶¶ 12–13; Neal Decl. (Pierce County) ¶ 4. Without federal funds, Plaintiffs will be forced to delay or cancel critical projects, divert resources from other projects (if they can), and upend their budgets. *See* Section III.C, *infra*.

### III.    ARGUMENT

#### A.    Legal Standard

A TRO or PI is warranted where the moving party establishes (1) it is likely to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) an injunction is in the public interest. *Winter v. Nat.*

---

[3] In the FTA's case, the recipient must "agree[] to comply with all applicable federal requirements and follow applicable federal guidance," which includes "an applicable federal law, regulation, or *executive order*." Dkt. # 6 at 130, 134 (emphasis added).

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 4
No.  2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). All of these factors favor Plaintiffs.

### B.    Plaintiffs Are Likely to Succeed on the Merits

This Court already found Plaintiffs are likely to succeed on their claims that the CoC and FTA Grant Conditions violate constitutional separation of powers principles and the Fifth Amendment's vagueness doctrine, as well as the APA. Dkt. # 52. The Court need not revisit the likelihood of success as to those conditions. Plaintiffs also are likely to succeed on the merits of their claims that the DOT Grant Conditions, previously imposed by FTA and now imposed by DOT and its other OAs, are unlawful for similar—and even more—reasons.

### 1.    Congress Has Not Authorized the DOT Grant Conditions

As this Court recognized in granting the first PI, "unless and until Congress confers power upon" them, agencies have "literally . . . no power to act . . . ." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). Just as no statute gave HUD or FTA the power to impose the conditions the Court already enjoined, the statutes underlying grants from DOT and the other DOT OAs do not either. As reflected by the Duffy Letter, DOT is attempting to condition appropriated funds on compliance with the President's policy agenda even though the President lacks "his own constitutional powers" to add new conditions to federal funding. *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1234 (9th Cir. 2018) (cleaned up). Absent an express delegation by Congress, the President's power to impose conditions on grants "is at its lowest ebb." *Id*. at 1233 (cleaned up). Congress has not authorized the DOT Grant Conditions, much less done so "unambiguously," as would be required to sustain the Conditions. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006).

In annual appropriations legislation and through authorization of non-discretionary formula grants, Congress has set forth priorities with respect to transportation grants, but has not

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 5
No.  2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-10

authorized conditions related to prohibiting DEI, local participation in federal immigration enforcement, or future presidential executive orders. *See, e.g.*, Consolidated Appropriations Act, 2024, Pub. L. 118-42, 138 Stat. 334, 342. And the conditions in the DOT grants' authorizing statutes commonsensically relate to *transportation* projects. In contrast, the DOT Discrimination Condition states it is imposed "[p]ursuant to . . . Executive Order 14173," not any statute. Sexton Decl., Ex. B § 20.2. Meanwhile, the FAA Grant Assurances purport to condition funding on compliance with a list of executive orders, without any statutory support. Parrot Decl., Ex. B § C.1. And the word "immigration" does not appear in the "federal transit laws," 49 U.S.C. chapter 53, on which the FTA Master Agreement purports to rely. Dkt. # 6 at 128.

Indeed, to the extent Congress has spoken on conditions in authorizing DOT grant funding, it has done so contrary to these new conditions. The Infrastructure Investment and Jobs Act (IIJA), which supports many DOT grants, includes programs intended to promote inclusion in a manner contrary to the Duffy Letter's stated understanding of the DOT Discrimination Condition. *See* 135 Stat. 429, 449 (finding, as a basis to extend the Disadvantaged Business Enterprises program to IIJA projects, "testimony and documentation of race and gender discrimination from numerous sources . . . show that race- and gender-neutral efforts alone are insufficient to address the problem"); *id.* at 591 (requiring evaluation of Reconnecting Communities Pilot Program projects based on "opportunities for inclusive economic development"); *id.* at 842 (prioritizing SMART projects that "promote a skilled workforce that is inclusive of minority or disadvantaged groups"); *see also* 49 U.S.C. § 47107(e)(1) (requiring airport sponsors to take "necessary action to ensure, to the maximum extent practicable," they meet a ten percent target for small business concerns owned by a "socially and economically disadvantaged individual," defined to include racial minorities). Thus, all DOT Grant Conditions violate the same separation of powers principles as

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 6
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

the parallel conditions the Court already enjoined.

### 2.    The Grant Conditions Violate the Spending Clause

Even if DOT had the power to impose substantive conditions on grant funds, the DOT Grant Conditions exercise the spending power in ways that even Congress could not.

First, "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). All of the DOT Grant Conditions fail this test. The DOT EO Condition is ambiguous because executive orders can only direct the activities of federal agencies, not external actors, leaving Plaintiffs to guess at what compliance with executive orders means for them. The DOT Immigration Enforcement Condition purports to require recipients to broadly "cooperate" in enforcement of federal immigration law without providing any definitions or criteria that might suggest what conduct that encompasses: Honoring administrative detainer requests? Providing information in response to notification requests? Having local law enforcement participate in immigration sweeps? And though the DOT Discrimination Provision is seemingly clear on its face insofar as it purports to require nothing more than compliance with federal nondiscrimination law, Defendants have injected ambiguity by reinterpreting nondiscrimination law in ways counter to the actual law as interpreted by the courts. *Compare* Dkt. # 6, Ex. D at 2 (defining scope of allegedly unlawful conduct broadly enough to potentially encompass affinity groups), *with, e.g.*, *Diemert v. City of Seattle*, No. 2:22-cv-1640, 2025 WL 446753, at *17–18 (W.D. Wash. Feb. 10, 2025) (affinity groups "open to any City employee" did not violate equal protection). If Plaintiffs cannot rely on court decisions to guide their compliance with the law, they cannot "ascertain what is expected of [them]," as required to pass muster under the Spending Clause. *Pennhurst*, 451 U.S. at 17.

Second, the Spending Clause only permits Congress to impose conditions germane "to the

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

federal interest in [the] particular" program. *South Dakota v. Dole*, 483 U.S. 203, 207 (1987). Here, the DOT Immigration Enforcement Condition is unlawful because it imposes a condition entirely unrelated to transportation funding. *See City & Cnty. of San Francisco*, 2025 WL 1358492, at *5 (identifying "categories of funds that have little or nothing to do with sanctuary policies (such as healthcare, transportation, emergency relief and so forth), that would have an unlawfully coercive effect on the Cities and Counties if those categories of funds were identified for suspension or termination"). The new DOT Discrimination Condition, which extends beyond the historical condition requiring compliance with federal nondiscrimination law, is similarly unrelated to transportation grants. Indeed, none of the authorizing statutes, which fund a range of transportation-related infrastructure and capital projects, have any nexus or relation to immigration enforcement or eliminating DEI. To the contrary, the Discrimination Condition *conflicts* with established federal nondiscrimination law and authorizing statutes. *See* Section III.B.1, *supra*.

Third, Congress's power cannot be twisted to compel local jurisdictions to adopt policies by offering a "financial inducement . . . so coercive as to pass the point at which pressure turns to compulsion." *Dole*, 483 U.S. at 211 (cleaned up). At a time when many Plaintiffs are struggling financially to recover from the Covid-19 pandemic, *e.g.*, Studwell Decl. (San Francisco) ¶ 5, Defendants' threat to restrict *all* DOT funding to Plaintiffs unless they comply with the administration's policy agenda "is much more than 'relatively mild encouragement'—it is a gun to the head." *Nat'l Fed. of Indep. Bus. v. Sebelius* ("*NFIB*"), 567 U.S. 519, 581 (2012) (opinion of Roberts, C.J.). And Defendants' coercion does not end there: This Condition purports to force Plaintiffs to concede compliance with nondiscrimination law, as reinterpreted by the administration, is "material" for purposes of the FCA—an essential element of an FCA claim. The risk of treble damages from an FCA case could be ruinous. San Francisco, for example, expects to

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 8
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

receive over $2 billion in DOT grant funding, a significant portion of its budget. Wagner Decl. (San Francisco) ¶ 9. The risk of paying three times that amount in FCA damages is a bazooka to San Francisco's head.[4] And the Deputy Attorney General's recently-announced initiative to utilize the FCA against entities that engage in purportedly "unlawful discrimination," *see* Section II, *supra*, only heightens the risk. These threats constitute "economic dragooning that leaves [Plaintiffs] with no real option but to acquiesce" to federal dictates. *NFIB*, 567 U.S. at 582.

**3.    The DOT Immigration Enforcement Condition Violates the Tenth Amendment**

The DOT Immigration Enforcement Condition also violates the Tenth Amendment because it imposes a coercive condition intended to commandeer local officials into enforcing federal immigration practices and law. The Tenth Amendment prohibits the federal government from "commandeering" state and local officials to help enforce federal law. *See Printz v. United States*, 521 U.S. 898 (1997). The Ninth Circuit has held that forcing state and local governments to assist with federal immigration enforcement would violate the Tenth Amendment. *United States v. California*, 921 F.3d 865, 888–91 (9th Cir. 2019). And the federal government cannot do indirectly through coercive grant conditions what it could not do directly. *NFIB*, 567 U.S. at 578. Yet that is exactly what Defendants are doing—holding a gun to recipients' heads to force them to use local resources to cooperate with federal officials in enforcing immigration law. *See id.* at 581. Accordingly, just as the DOT Immigration Enforcement Condition is impermissibly coercive under the Spending Clause (*see* Section III.B.2, *supra*), it also violates the Tenth Amendment's anti-commandeering principles. *Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113, 1151

---

[4] Small cities as well as large ones depend on the federal government avoiding improper coercion. For example, DOT funds make up approximately 10-15% of Culver City's annual Operating and Capital budget. Nachbar Decl. ¶ 20.

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 9
No.  2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(D.N.D. 2021) ("The Spending Clause's coercion backstop is closely linked to the Tenth Amendment concept that the federal government may not commandeer the states to enact or administer a federal regulatory program" (cleaned up)).

### 4.    Imposing the Grant Conditions Violates the APA

The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary" and "capricious," "not in accordance with law," "contrary to constitutional right," "in excess of statutory jurisdiction," or "without observance of procedure required by law." 5 U.S.C. § 706(2). The DOT Grant Conditions violate each of these requirements.

As a threshold matter, imposition of the DOT Grant Conditions is a "final agency action" under 5 U.S.C. § 704, as it both "mark[s] the consummation of the agency's decision-making process" and is one "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up).

Turning to the merits of the APA claims, first, as discussed above, the DOT Conditions are "in excess of statutory jurisdiction," "not in accordance with law," and "contrary to constitutional right," because they do not derive from a congressional delegation of authority and violate constitutional protections. 5 U.S.C. § 706(2).

Second, this Court's conclusion that imposing the FTA Grant Conditions is arbitrary and capricious is equally applicable to the imposition of substantively identical conditions on other DOT grants. Imposing the DOT Grant Conditions fails the basic requirement that an agency action be "reasonable and reasonably explained." *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (cleaned up). An agency must offer "a satisfactory explanation for its action," and cannot rely on "factors which Congress has not intended it to consider" or ignore "an important aspect of the problem . . . ." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 10
No. 2:25-cv-00814-BJR                    FER-15

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Agencies may change their policies, but they must "display awareness" they are doing so, provide "good reasons for the new policy," and demonstrate they have taken account of "reliance interests" engendered by the prior policy. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Here, DOT has offered no reasoned explanation for the new DOT Grant Conditions. The Duffy Letter does not suffice,[5] as it merely parrots the executive orders and fails to cite facts or statutory authority supporting the Conditions. Dkt. # 6 at 345–48. It asserts that failing to cooperate in federal immigration law enforcement violates recipients' legal obligations and undermines the safety of transportation systems, and that DEI policies "presumptively violate[] Federal law." *Id.* at 346–47. It also pretends this is DOT's "existing interpretation of Federal law." *Id.* But it fails to acknowledge its departure from court decisions holding local governments are not required to assist with carrying out federal immigration law (*e.g.*, *California*, 921 F.3d at 889), and affinity groups and other DEI programs premised on racial, gender, or other classifications and open to all comply with federal nondiscrimination law (*e.g.*, *Diemert*, 2025 WL 446753, at *17–18). The Duffy Letter purports to justify the DOT Discrimination Condition on the basis that DOT "must ensure that discrimination based on [protected characteristics] does not exist in the programs or activities it funds . . . ." Dkt. # 6 at 346. But this is inconsistent with the Condition, which apparently requires the recipient to certify it does not operate *any* DEI program DOT deems prohibited—whether federally funded or not. Nor does the Duffy Letter explain how Plaintiffs could comply with the Conditions while also complying with statutory and regulatory requirements in tension with them. For example, DOT does not attempt to reconcile its apparent

---

[5] Notably, the Duffy Letter was issued *after* some of the challenged conditions were imposed and agreed to by recipients with a different understanding of the terms and the law. Studwell Decl. ¶ 22. This post hoc rationalization is insufficient under the APA. *See Lotus Vaping Techs., LLC v. U.S. Food & Drug Admin.*, 73 F.4th 657, 668 (9th Cir. 2023) ("[A]n agency must defend its actions based on the reasons it gave when it acted, not with post hoc rationalizations" (cleaned up)).

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

DEI ban with its Disadvantaged Business Enterprise program, which Congress re-authorized in 2021, finding "discrimination and related barriers continue to pose significant obstacles for minority and women-owned businesses" in certain transportation contracting. Pub. L. 117–58, div. A, title I, § 11101(e), Nov. 15, 2021, 135 Stat. 448; *see also* Am. Compl. ¶¶ 94–95, 153, 165–66, 180, 197–98, 210–11, 221–22.

Third, in imposing new conditions without explanation, the FTA, FAA, and FRA failed to observe procedure required by law. 5 U.S.C. § 706(2)(D). An agency "must abide by its own regulations." *Fort Stewart Schs. v. Fed. Labor Rels. Auth.*, 495 U.S. 641, 654 (1990). Those OAs have adopted regulations requiring notice-and-comment rulemaking when they promulgate substantive rules.[6] *See* 49 C.F.R. §§ 601.22(a), 601.24–601.28 (FTA); 14 C.F.R. Part 11 (FAA); 49 C.F.R. §§ 211.11–211.33 (FRA). The Conditions purport to impose binding obligations that substantively change existing law and policies, including federal nondiscrimination law. *E.g.*, *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 449 (9th Cir. 1994) ("Substantive rules . . . create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress"). In imposing the Conditions, FTA, FAA, and FRA failed to comply with notice-and-comment requirements in their own regulations (and for FTA, in 49 U.S.C. § 5334(k)(1)).

### C.    Plaintiffs Will Suffer Irreparable Harm If the Conditions Are Not Enjoined

Plaintiffs must decide as early as May 27, or in some cases immediately, to accept unlawful conditions or risk losing federal funds. *E.g.*, Scocco Decl. (Columbus) ¶ 11 (May 27 deadline); Gould Decl. (Intercity Transit) ¶ 25 (deadline passed, immediate need to sign); Sexton Decl. (Minneapolis) ¶¶ 26, 31, 38 (same); Wong Decl. (Pasadena) ¶¶ 16-18 (immediate need to draw down); Semonoff Decl. (Cambridge) ¶ 24 (May 31 expiration of housing funds for subrecipients);

---

[6] Statutory notice-and-comment applies for certain FTA grant conditions. 49 U.S.C. § 5334(k).

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 12
No.  2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Credio Decl. (Tucson) ¶ 19 (May 31 deadline); Parrot Decl. (King County) ¶ 27 (same); Ghouse

Decl. (Port of Seattle) ¶ 7 (June 3 deadline); Ochoa Decl. (NYC) ¶ 13 (June 13 deadline).

Plaintiffs are being compelled on impossible timelines, in one instance as short as one day,

G. Davis Decl. (Chicago) ¶ 17, to swallow unlawful conditions at the risk of incurring financial

penalties, or giving up funds they were already awarded and, in many cases, accounted for in

budget and project planning. *See*, *e.g.*, *Hecox v. Little*, 104 F.4th 1061, 1088 (9th Cir. 2024);

*Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017). Loss of those funds at issue would

result in immediate, irreparable, and reverberating harms to Plaintiffs—including upending their

budgets, *e.g.*, T. Davis Decl. (King County) ¶ 19; Cornell Decl. (Pittsburgh) ¶ 16; Studwell Decl.

(San Francisco) ¶¶ 14, 18; potentially forcing reductions in their workforce or loss of staff needed

to maintain and improve infrastructure, *e.g.*, Verlinich Decl. (Santa Monica Housing Auth.) ¶ 23;

Ochoa Decl. (NYC) ¶ 26; cutting off critical homelessness services and transportation

infrastructure and safety services, thus putting the public at risk, *e.g.*, King Decl. (Bend) ¶ 27;

Walker Decl. (Pima County) ¶ 12; and forcing Plaintiffs to divert resources from other public

services, *e.g.*, Ochoa Decl. (NYC) ¶ 26.

For example, without CoC funds, over 200 individuals in Plaintiff City of Cambridge

would potentially lose their housing and access to critical supportive services, and the loss of

supportive housing capacity would further strain its emergency shelter system. Semonoff Decl.

(Cambridge) ¶ 31. Tucson is developing contingency plans and running housing programs below

capacity until it has assurance of continued funding. Chanecka Decl. (Tucson) ¶ 29.

Similarly, loss of DOT funding would force Plaintiffs to substantially curtail existing

and planned transportation safety and other improvements and operations. Plaintiffs have planned

to use already-awarded DOT funds to, for example, enhance pedestrian and cyclist safety, *e.g.*,

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 13
No.  2:25-cv-00814-BJR                    FER-18

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Franklin-Hodge Decl. (Boston) ¶ 13; Jordan Decl. (Portland) ¶ 19; Ristow Decl. (San José) ¶ 3; Ochoa Decl. (NYC) ¶ 2; reconfigure major roadways to decrease crashes and improve transit, *e.g.*, G. Davis Decl. (Chicago) ¶ 8; Scocco Decl. (Columbus) ¶ 12; conduct important capital and safety improvements to airports, such as runway rehabilitations and earthquake resilience, *e.g.*, King Decl. (Bend) ¶ 26; Roche Decl. (Chicago) ¶ 10; Stout Decl. (Sonoma County) ¶ 7; Ghouse Decl. (Port of Seattle) ¶ 7; Nakornkhet Decl. (San Francisco) ¶ 11; maintain, repair, and replace a wide range of transit vehicles, *e.g.*, Gould Decl. (Intercity Transit) ¶ 12, Nakornkhet Decl. (San Francisco) ¶ 14; develop and apply advanced transportation technology, *e.g.*, Sexton Decl. (Minneapolis) ¶ 35; Ochoa Decl. (NYC) ¶ 16; and repair century-old bridges that pose a serious safety hazard, *e.g.*, Freitas Decl. (Santa Clara) ¶ 13. In some cases, Plaintiffs need to draw down funds immediately to pay for current projects, *e.g.*, Gould Decl. (Intercity Transit) ¶ 25; or face delays, *e.g.*, Hopkins Decl. (Nashville) ¶ 13; Stout Decl. (Sonoma County) ¶ 9. Plaintiffs may need to divert resources from other projects to compensate or plan around the uncertainty of whether they can accept federal funds, straining their resources and putting other projects in jeopardy. *E.g.*, Studwell Decl. (San Francisco) ¶ 14; Ochoa Decl. (NYC) ¶ 22; Biel Decl. (Denver) ¶ 15. Without these funds, planned projects may become too expensive to undertake, requiring they be modified or cancelled. *E.g.*, Hopkins Decl. (Nashville) ¶ 30; Wolterink Decl. (Sound Transit) ¶ 16.

Transportation projects require years of planning. Nachbar Decl. (Culver City) ¶ 21. As a result of potential loss and uncertainty surrounding these grants, Plaintiffs will face dire consequences for their transportation infrastructure and resident safety. For example, without prompt access to FHWA funds to which these unlawful conditions have been attached, Minneapolis would need to cancel planned rehabilitation of the Nicollet Avenue Bridge, a major thruway that supports a bus route, and close the bridge by 2030. Sexton Decl. (Minneapolis) ¶¶

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

19, 24. The record is replete with examples of such impending, irreparable harm. *E.g.*, Franklin-Hodge Decl. (Boston) ¶ 28; Hopkins Decl. (Nashville) ¶¶ 14, 19; Neal Decl. (Pierce County) ¶ 12.

### D.    The Equities Weigh in Plaintiffs' Favor

The equities and public interest, which merge when the government is a party, tip sharply in Plaintiffs' favor. *Wolford v. Lopez*, 116 F.4th 959, 976 (9th Cir. 2024). The threat of harm to Plaintiffs far outweighs the federal government's interest in immediately imposing the conditions. And preserving Plaintiffs' constitutional rights is in the public interest. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Whatever interest the Executive may assert in introducing new grant conditions and in enforcing them during the pendency of this litigation pales in comparison to Plaintiffs' irreparable harm from enforcement of the new conditions. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).

## IV.    CONCLUSION

Accordingly, Plaintiffs request, with respect to the CoC Grant Conditions, that (1) a TRO issue as to Plaintiffs Cambridge and City of Pasadena, who have immediate needs to draw down funds; and (2) a PI issue as to those Plaintiffs and Plaintiffs King County RHA, Nashville, Pima County, San José, Santa Monica HA, and Tucson. As to the DOT Grant Conditions, Plaintiffs request (1) a TRO be issued as to Plaintiffs Columbus, Intercity Transit, King County, Minneapolis, NYC, Port of Seattle, and Tucson, who face imminent signing deadlines or other imminent irreparable harms; and (2) a PI issue as to those Plaintiffs as well as Plaintiffs Bend, Boston, Chicago, Culver City, Denver, Nashville, Pierce County, Pima County, Pittsburgh, Portland, San Francisco, San José, Santa Clara, Santa Monica, SFCTA, Snohomish County, Sonoma County, Sound Transit, TIMMA, and Wilsonville, including their subrecipients, who need relief from these unconstitutional conditions during the pendency of this case.

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 15
No.  2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-20

DATED this 21st day of May, 2025.

PACIFICA LAW GROUP LLP

/s/ Paul J. Lawrence
Paul J. Lawrence, WSBA #13557
Jamie Lisagor, WSBA #39946
Sarah S. Washburn, WSBA #44418
Meha Goyal, WSBA #56058
Luther Reed-Caulkins, WSBA #62513
*Special Deputy Prosecutors*

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101
T: 206-245-1700
F: 206-245-1750
Paul.Lawrence@PacificaLawGroup.com
Jamie.Lisagor@PacificaLawGroup.com
Sarah.Washburn@PacificaLawGroup.com
Meha.Goyal@PacificaLawGroup.com
Luther.Reed-Caulkins@PacificaLawGroup.com

*Attorneys for All Plaintiffs*

LEESA MANION
King County Prosecuting Attorney

/s/ David J. Hackett
David J. Hackett, WSBA #21234
*General Counsel to Executive*
Alison Holcomb, WSBA #23303
*Deputy General Counsel to Executive*
Erin Overbey, WSBA #21907
*Senior Deputy Prosecuting Attorney*
Cristy Craig, WSBA #27451
*Senior Deputy Prosecuting Attorney*
Donna Bond, WSBA #36177
*Senior Deputy Prosecuting Attorney*

Chinook Building
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 16
No.  2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

david.hackett@kingcounty.gov
aholcomb@kingcounty.gov
eroverbey@kingcounty.gov
cristy.craig@kingcounty.gov
donna.bond@kingcounty.gov

*Attorneys for Plaintiff Martin Luther
King, Jr. County*


JASON J. CUMMINGS
Snohomish County Prosecuting Attorney

*/s/ Bridget E. Casey*
Bridget E. Casey, WSBA #30459
Rebecca J. Guadamud, WSBA #39718
Rebecca E. Wendling, WSBA #35887

Snohomish County Prosecuting Attorney's Office
3000 Rockefeller Avenue, M/S 504
Everett, WA 98201-4046
(425) 388-6392
Bridget.Casey@co.snohomish.wa.us
Rebecca.Guadamud@co.snohomish.wa.us
Rebecca.Wendling@co.snohomish.wa.us

*Attorneys for Plaintiff Snohomish County*


DAVID CHIU
San Francisco City Attorney

*/s/ David Chiu*
David Chiu (CA Bar No. 189542)
*San Francisco City Attorney*
Yvonne R. Meré (CA Bar No. 175394)
*Chief Deputy City Attorney*
Mollie M. Lee (CA Bar No. 251404)
*Chief of Strategic Advocacy*
Sara J. Eisenberg (CA Bar No. 269303)
*Chief of Complex & Affirmative Litigation*
Ronald H. Lee (CA Bar No. 238720)
*Assistant Chief, Complex & Affirmative Litigation*
Alexander J. Holtzman (CA Bar No. 311813)
*Deputy City Attorney*
1390 Market Street, 7th Floor

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 17
No.  2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-22

1    San Francisco, CA 94102
2    (415) 554-4700
     Cityattorney@sfcityatty.org
3    Yvonne.Mere@sfcityatty.org
     Mollie.Lee@sfcityatty.org
4    Sara.Eisenberg@sfcityatty.org
     Ronald.Lee@sfcityatty.org
5    Alexander.Holtzman@sfcityatty.org

6    *Attorneys for Plaintiffs City and County of San
     Francisco, San Francisco County Transportation
7    Authority, and Treasure Island Mobility
     Management Agency*
8

9    OFFICE OF THE COUNTY COUNSEL,
     COUNTY OF SANTA CLARA
10

11   */s/ Tony LoPresti*
     Tony LoPresti (CA Bar No. 289269)
12   *County Counsel*
     Kavita Narayan (CA Bar No. 264191)
13   *Chief Assistant County Counsel*
     Meredith A. Johnson (CA Bar No. 291018)
14   *Lead Deputy County Counsel*
     Stefanie L. Wilson (CA Bar No. 314899)
15   Cara H. Sandberg (CA Bar No. 291058)
     *Deputy County Counsels*
16   70 West Hedding Street
     East Wing, 9th Floor
17   San José, CA 95110
     (408) 299-9021
18   tony.lopresti@cco.sccgov.org
     kavita.narayan@cco.sccgov.org
19   meredith.johnson@cco.sccgov.org
     stefanie.wilson@cco.sccgov.org
20   cara.sandberg@cco.sccgov.org
21

22   *Attorneys for Plaintiff County of Santa Clara*
23

24   ADAM CEDERBAUM
     Corporation Counsel, City of Boston
25

26   */s/ Samantha H. Fuchs*
     Samantha H. Fuchs (MA BBO No. 708216)
27

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 18
No.  2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Senior Assistant Corporation Counsel*
Samuel B. Dinning (MA BBO No. 704304)
*Senior Assistant Corporation Counsel*
One City Hall Square, Room 615
Boston, MA 02201
(617) 635-4034
samantha.fuchs@boston.gov
samuel.dinning@boston.gov

*Attorneys for Plaintiff City of Boston*


CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY

*/s/ Richard N. Coglianese*
Richard N. Coglianese (OH Bar No. 0066830)
Assistant City Attorney
77 N. Front Street, 4th Floor
Columbus, Ohio 43215
(614) 645-0818 Phone
(614) 645-6949 Fax
rncoglianese@columbus.gov

*Attorney for Plaintiff City of Columbus*


PUBLIC RIGHTS PROJECT

*/s/ Sharanya Mohan*
Sharanya (Sai) Mohan (CA Bar No. 350675)
Naomi Tsu (OR Bar No. 242511)
Toby Merrill (MA Bar No. 601071)*
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
(510) 738-6788
sai@publicrightsproject.org
naomi@publicrightsproject.org
toby@publicrightsproject.org

*Counsel for Plaintiffs City of Columbus, City
& County of Denver, Metro Government of
Nashville & Davidson County, Pima County,
County of Sonoma, City of Bend, City of
Cambridge, City of Chicago, City of Culver*

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 19
No.  2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    *City, City of Minneapolis, City of Pasadena,*
     *City of Pittsburgh, City of Portland, City of*
2    *San José, City of Santa Monica, City of*
     *Tucson, City of Wilsonville, and Santa Monica*
3    *Housing Authority*

4

5    MURIEL GOODE-TRUFANT
     Corporation Counsel of the City of New York
6

7    */s/ Doris Bernhardt*
     Doris Bernhardt (NY Bar No. 4449385)
8    Joshua P. Rubin (NY Bar No. 2734051)
     Aatif Iqbal (NY Bar No. 5068515)
9    *Assistant Corporation Counsels*
     100 Church Street
10   New York, NY 10007
     (212) 356-1000
11   dbernhar@law.nyc.gov
     jrubin@law.nyc.gov
12   aiqbal@law.nyc.gov
13

14   *Attorneys for Plaintiff City of New York*

15

16   ASHLEY M. KELLIHER
     Assistant City Attorney
17   */s/ Ashley M. Kelliher*

18   Ashley M. Kelliher (CO Bar No. 40220)*
     *Assistant City Attorney*
19   Denver City Attorney's Office
     201 West Colfax Avenue
20   Denver, Colorado 80202
     720-913-3137 (phone)
21   720-913-3190 (fax)
     ashley.kelliher@denvergov.org
22

23   DAVID P. STEINBERGER
     Assistant City Attorney
24   */s/ David P. Steinberger*

25   David P. Steinberger (CO Bar No. 48530)*
     *Assistant City Attorney*
26   Denver City Attorney's Office
     Denver International Airport
27

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 20
No. 2:25-cv-00814-BJR                FER-25

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

8500 Pena Boulevard
Airport Office Building, 9th Floor
Denver, Colorado 80249-6340
303-342-2562 (phone)
david.steinberger@flydenver.com

*Attorneys for Plaintiff City and County of Denver*

LAURA CONOVER
Pima County Attorney

*/s/ Samuel E. Brown*
Samuel E. Brown (AZ Bar No. 027474)*
Bobby Yu (AZ Bar No. 031237)*
Kyle Johnson (AZ Bar No. 032908)*
Pima County Attorney's Office, Civil Division
32 N. Stone, Suite 2100
Tucson, Arizona 85701
Tel: (520) 724-5700
sam.brown@pcao.pima.gov
bobby.yu@pcao.pima.gov
kyle.johnson@pcao.pima.gov

*Attorneys for Plaintiff Pima County*

ROBERT H. PITTMAN, County Counsel

*/s/ Joshua A. Myers*
Joshua A. Myers (CA Bar No. 250988)*
*Chief Deputy County Counsel*
Sonoma County Counsel's Office
575 Administration Drive, Rm. 105A
Santa Rosa, CA 95403
Office: (707) 565-2421
Fax: (707) 565-2624
Joshua.Myers@sonoma-county.org

*Attorneys for Plaintiff County of Sonoma*

OFFICE OF THE CITY ATTORNEY FOR THE
CITY OF BEND

*/s/ Ian M. Leitheiser*
Ian M. Leitheiser (OSB #993106)*
*City Attorney*

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 21
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    Elizabeth Oshel (OSB #104705)*
2    *Senior Assistant City Attorney*
     Michael J. Gaffney (OSB #251680)*
3    *Senior Assistant City Attorney*
     City of Bend
4    PO Box 431
     Bend, OR 97709
5    (541) 693-2128
6    ileitheiser@bendoregon.gov
     eoshel@bendoregon.gov
7    mgaffney@bendoregon.gov

8    *Attorneys for Plaintiff City of Bend*

9

10   CITY OF CAMBRIDGE, LAW DEPARTMENT
     MEGAN B. BAYER, CITY SOLICITOR

11   /s/ Megan B. Bayer
12   Megan B. Bayer (MA BBO No. 669494)*
     *City Solicitor*
13   Elliott J. Veloso (MA BBO No. 677292)*
     *Deputy City Solicitor*
14   Diane Pires (MA BBO No. 681713)*
     *Assistant City Solicitor*
15   Cambridge City Hall, 3rd Floor
16   795 Massachusetts Avenue
     Cambridge, MA 02139
17   (617) 349-4121
18   mbayer@cambridgema.gov
     eveloso@cambridgema.gov
19   dpires@cambridgema.gov

20   *Attorneys for Plaintiff City of Cambridge*

21

22   MARY B. RICHARDSON-LOWRY
     Corporation Counsel of the City of Chicago

23
     /s/ Rebecca Hirsch
24   Rebecca Hirsch (IL Bar No. 6279592)*
     Chelsey Metcalf (IL Bar No. 6337233)*
25   City of Chicago Department of Law
26   121 North LaSalle Street, Room 600
     Chicago, Illinois 60602
27   Tel: (313) 744-9484

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 22
No.  2:25-cv-00814-BJR                    FER-27

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

rebecca.hirsch2@cityofchicago.org
chelsey.metcalf@cityofchicago.org

*Attorneys for Plaintiff City of Chicago*

KRISTYN ANDERSON
City Attorney

*/s/ Kristyn Anderson*
Kristyn Anderson (MN Lic. 0267752)*
*City Attorney*
Sara J. Lathrop (MN Lic. 0310232)*
Munazza Humayun (MN Lic. 0390788)*
*Assistant City Attorneys*
350 South Fifth Street
Minneapolis, MN 55415
Tel: 612-673-3000
kristyn.anderson@minneapolismn.gov
sara.lathrop@minneapolismn.gov
munazza.humayun@minneapolismn.gov

*Attorneys for Plaintiff City of Minneapolis*

KRYSIA KUBIAK, Esq.
City Solicitor

*/s/ Julie E. Koren*
Julie E. Koren (PA Bar No. 309642)*
*Associate City Solicitor*
City of Pittsburgh, Dept. of Law
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219
(412) 255-2025
Julie.Koren@pittsburghpa.gov
Krysia.Kubiak@Pittsburghpa.gov

*Counsel for Plaintiff City of Pittsburgh*

ROBERT TAYLOR
Portland City Attorney

*/s/ Caroline Turco*
Caroline Turco (OR Bar No. 083813)*

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 23
No.  2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1  *Senior Deputy City Attorney*
   1221 SW Fourth Avenue, Room 430
2  Portland, OR 97204
   Tel: (503) 823-4047
3  Fax: (503) 823-3089
   Caroline.Turco@portlandoregon.gov
4

5  *Attorney for Plaintiff City of Portland*

6

7  NORA FRIMANN
   City Attorney
8
   */s/ Nora Frimann*
9  Nora Frimann (CA Bar No. 93249)*
   *City Attorney*
10 Elisa Tolentino (CA Bar No. 245962)*
   *Chief Deputy City Attorney*
11 200 E Santa Clara St
12 San José, CA 95113-1905
   Tel: 408-535-1900
13 Fax: 408-998-3131
   cao.main@sanjoseca.gov
14
15 *Attorneys for Plaintiff City of San José*

16 CITY OF WILSONVILLE

17 */s/ Amanda R. Guile-Hinman*
18 Amanda R. Guile-Hinman, WSBA #46282
   29799 SW Town Center Loop E
19 Wilsonville, OR 97070
   guile@wilsonvilleoregon.gov
20 (503) 570-1509

21 *Attorneys for the City of Wilsonville*

22

23 CENTRAL PUGET SOUND REGIONAL
   TRANSIT AUTHORITY
24
   */s/ Andrés Muñoz*
25 Andrés Muñoz, WSBA #50224
   Desmond Brown, WSBA #16232
26 Central Puget Sound Regional Transit Authority
   401 S. Jackson St.
27

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Seattle, WA 98104
(206) 665-8989
andres.munoz@soundtransit.org
desmond.brown@soundtransit.org

*Attorneys for the Central Puget Sound Regional
Transit Authority*

LAW, LYMAN, DANIEL, KAMERRER
& BOGDANOVICH, P.S.

*/s/ Jeffrey S. Myers*
Jeffrey S. Myers, WSBA #16390
Erin L. Hillier, WSBA #42883
Jakub Kocztorz, WSBA #61393
P.O. Box 11880
Olympia, WA 98508
T: (360) 754-3480
F: (360) 357-3511
jmyers@lldkb.com
ehillier@lldkb.com
jkocztorz@lldkb.com

*Attorneys for Plaintiff Intercity Transit*

PORT OF SEATTLE
Anderson & Kreiger LLP

*/s/ Melissa C. Allison*
Melissa C. Allison (MA Bar No. 657470)*
David S. Mackey (MA Bar No. 542277)*
Christina S. Marshall (MA Bar No. 688348)*
Anderson & Kreiger LLP
50 Milk Street, Floor 21
Boston, MA 02109
(617) 621-6500
mallison@andersonkreiger.com
dmackey@andersonkreiger.com
cmarshall@andersonkreiger.com

*Attorneys for Plaintiff Port of Seattle*

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 25
No. 2:25-cv-00814-BJR

FER-30

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

KING COUNTY REGIONAL
HOMELESSNESS AUTHORITY

*/s/ Edmund Witter*
Edmund Witter, WSBA #52339
King County Regional Homelessness Authority
400 Yesler Way Suite 600
Seattle, WA 98104
(206) 639-7013
Edmund.witter@kcrha.org

*Attorneys for Plaintiff King County Regional*
*Homelessness Authority*

*\* Pro Hac Vice application forthcoming*

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21st, 2025, I served a true and correct copy of the foregoing

document on the following parties by the method(s) indicated below:

| | |
|---|---|
| Brian C. Kipnis<br>Annalisa L. Cravens<br>Sarah L. Bishop<br>Rebecca S. Cohen<br>*Assistant United States Attorneys*<br><br>Office of the United States Attorney<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br>brian.kipnis@usdoj.gov<br>annalisa.cravens@usdoj.gov<br>sarah.bishop@usdoj.gov<br>rebecca.cohen@usdoj.gov<br><br>*Attorneys for Defendants Scott Turner, U.S. Dept. of Housing and Urban Development, Sean Duffy, U.S. Dept. of Transportation, Tariq Bokhari, the Federal Transit Administration, Gloria M. Shepherd, the Federal Highway Administration, Chris Rocheleau, the Federal Aviation Administration, Drew Feeley, the Federal Railroad Administration* | ☒ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☐ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

I declare under penalty of perjury under the laws of the United States and the State of

Washington that the foregoing is true and correct.

DATED this 21st day of May, 2025.

*/s/ Gabriela DeGregorio*
Gabriela DeGregorio
Litigation Assistant
Pacifica Law Group LLP

PLAINTIFFS' SECOND MOTION FOR TRO AND
PRELIMINARY INJUNCTION – 27
No.  2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR.
COUNTY; PIERCE COUNTY;
SNOHOMISH COUNTY; CITY AND
COUNTY OF SAN FRANCISCO;
COUNTY OF SANTA CLARA; CITY
OF BOSTON; CITY OF COLUMBUS;
and CITY OF NEW YORK,

                               Plaintiffs,

vs.

SCOTT TURNER in his official capacity
as Secretary of the U.S. Department of
Housing and Urban Development; the
U.S. DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT; SEAN
DUFFY in his official capacity as
Secretary of the U.S. Department of
Transportation; the U.S. DEPARTMENT
OF TRANSPORTATION; MATTHEW
WELBES in his official capacity as acting
Director of the Federal Transit
Administration; and the FEDERAL
TRANSIT ADMINISTRATION,

                               Defendants.

No. 2:25-cv-00814-BJR

PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING
ORDER

NOTE ON MOTION CALENDAR:
MAY 5, 2025

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS ....................................................................................2

    A.   Federal Funding for Homelessness Assistance ....................................................2

    B.   HUD Attaches New Unlawful Conditions to CoC Funding ..................................3

    C.   FTA Attaches New Unlawful Conditions to Mass Transit Funding......................8

III.  ARGUMENT ......................................................................................................11

    A.   Legal Standard ..................................................................................................11

    B.   Plaintiffs Have Standing to Challenge the CoC and FTA Grant Conditions.......11

    C.   Plaintiffs Are Likely to Succeed on the Merits....................................................12

        1.    The Grant Conditions Violate the Separation of Powers ...........................12

            a)   Congress has not authorized the CoC Grant Conditions (All Moving Plaintiffs) ................................................................................13

            b)   Congress has not authorized the FTA Grant Conditions (King County Only)..........................................................................................16

            c)   The CoC and FTA Grant Conditions are not germane to the programs at issue .........................................................................................17

        2.    The Grant Conditions Are Unconstitutionally Vague ................................17

        3.    Imposing New Conditions Violates the APA...............................................20

    D.   Plaintiffs Will Suffer Immediate and Irreparable Harm If the Conditions Are Not Blocked ....................................................................................................24

    E.   The Balance of Equities Weigh in Plaintiffs' Favor, and a Temporary Restraining Order Is in the Public Interest ........................................................................26

IV.  CONCLUSION..................................................................................................27

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - i
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-34

## I.    INTRODUCTION

The U.S. Department of Housing and Urban Development (HUD) and the Federal Transit Administration (FTA) seek to impose new conditions impacting hundreds of millions in federal grant funding to moving Plaintiffs' local governments.[1] HUD and FTA do so without Congressional authorization and in violation of the Constitution and the Administrative Procedure Act (APA). This is an effort to further President Donald J. Trump's political agenda—expressed through a series of Executive Orders—to eliminate all forms of diversity, equity, and inclusion (DEI) policies, require local governments to help with the administration's aggressive and lawless immigration enforcement, impose new verification requirements to check immigration status for all public programs, target and punish transgender people, and cut off information about lawful abortions. In addition to being new and unauthorized, many of these conditions are contrary to conditions existing at the time of grant application.

The funding at issue includes homelessness assistance grants awarded by HUD to pay for congressionally approved housing and supportive services for Plaintiffs' most vulnerable residents, including individuals and families experiencing chronic homelessness. Other funding goes toward grants awarded by the U.S. Department of Transportation (DOT) and FTA to maintain plaintiff King County's Metro transit system—a congressionally approved purpose—that serves millions of riders. Defendants' new grant conditions violate the Constitution's separation of powers doctrine, the Fifth Amendment's vagueness doctrine, and the APA.

---

[1] This TRO motion is brought by plaintiffs Martin Luther King, Jr. County (King County), Pierce County, Snohomish County, City and County of San Francisco (San Francisco), County of Santa Clara (Santa Clara), City of Boston (Boston), and City of New York (New York) (collectively, "Plaintiffs") as to the HUD conditions and King County as to the FTA conditions. Plaintiff City of Columbus does not join in this motion.

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 1
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Defendants have forced Plaintiffs to make the Hobson's choice between agreeing to abandon their values, laws, and policies or else put hundreds of millions of grant dollars in jeopardy in an extremely limited time frame. Plaintiffs must decide as early as **Thursday, May 8, 2025** whether to agree to the unlawful conditions or forfeit federal funding, which would cut off critical programs and services for their residents, force reductions in their workforces, and significantly impact their budgets. Because Plaintiffs are likely to succeed on the merits of their claims and will be immediately and irreparably harmed if these conditions are allowed to stand, and the equities weigh strongly in their favor, this Court should enter a temporary restraining order barring Defendants from imposing or enforcing the grant conditions identified here until the Court can rule on a motion for preliminary injunction.[2]

## II.    STATEMENT OF FACTS

### A.    Federal Funding for Homelessness Assistance

Title IV of the McKinney-Vento Homeless Assistance Act ("Assistance Act") authorizes funding for the Continuum of Care (CoC) program to rehouse homeless individuals and families, provide supportive services, and promote "community-wide commitment to the goal of ending homelessness." 42 U.S.C. § 11381. HUD issues a Notice of Funding Opportunity (NOFO)[3] and then awards CoC grants to local coalitions, known as "Continuums," in a competitive process. *Id.* § 11382(a). The grants are subject to conditions established in the Assistance Act, HUD regulations, and the NOFO. *Id.* § 11386(b); 24 C.F.R. § 578.23(c). No later than 45 days from the

---

[2] On May 4, 2025, Plaintiffs provided notice to Defendants of Plaintiffs' intent to move for a temporary restraining order. Lisagor Decl., ¶ 2.

[3] The terms NOFO, "Notice of Funding Availability," and "Funding Opportunity Announcement" all refer to a formal announcement of the availability of federal funding.

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 2
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

satisfaction of certain conditions, the recipient and HUD must execute the grant agreement. 24 C.F.R. § 578.23(a).

Last year, HUD issued a NOFO identifying certain grant conditions. *See* U.S. Dep't of Housing & Urban Dev., Notice of Funding Opportunity for FY 2024 and FY 2025 Continuum of Care Competition and Renewal or Replacement of Youth Homeless Demonstration Program (Jul. 24, 2024), https://www.hud.gov/sites/dfiles/CPD/documents/FY2024_FY2025_CoC_and_YHDP _NOFO_FR-6800-N-25.pdf ("FYs 2024/2025 NOFO"). None of the conditions challenged here were included in the NOFO. *See id.* Rather, the NOFO required applicants to explain how their programs would "advance racial equity" and address "the needs of LGBTQ+ individuals." *Id.* at 85, 97. After evaluating their applications, HUD conditionally awarded Plaintiffs almost $300 million in CoC grants for Fiscal Year 2024. Marshall Decl., ¶¶ 10–19; Dillon Decl., ¶¶ 7–16, Johns Decl., ¶¶ 10–14; Warren Decl., ¶¶ 10–18; Barbee Decl., ¶¶ 7–18; McSpadden Decl., ¶¶ 7, 10–11, 16; Kaminski Decl., ¶¶ 14, 19–20, 24–25; Brell-Vujovic Decl., ¶ 9. Relying on these awards, Plaintiffs have already committed, and in some cases expended, millions of dollars for homelessness assistance services. *See id.*

### B.    HUD Attaches New Unlawful Conditions to CoC Funding

In March 2025, HUD began presenting Plaintiffs with CoC grant agreements containing grant conditions ("CoC Grant Conditions") that were not included in the NOFO or authorized by any statute or regulation. *See, e.g.*, Marshall Decl., Ex. B ("CoC Agreements"). These new conditions stem from President Trump's Executive Orders directing agencies, without notice or any authority, to require grant recipients to implement his political agenda as a condition to receiving federal funds. The CoC Agreements contain the following unlawful conditions:

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 3
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-37

**CoC EO Condition:** The CoC Agreements state that "[t]his Agreement, the Recipient's use of funds provided under this Agreement . . . , and the Recipient's operation of projects assisted with Grant Funds" are "governed by" not only certain specified statutes, rules, and grant-related documents, but also "all current Executive Orders . . . ." *Id*. at 1.

**CoC Discrimination Condition:** The CoC Agreements require the recipient to certify "it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964." *Id.* While Plaintiffs have routinely certified compliance with federal nondiscrimination laws as a condition of federal funding in the past, President Trump, HUD, and other agencies have confirmed their agenda is to prohibit policies or programs promoting inclusion for people of different races, ethnicities, national origins, sexes, gender identities, and sexual orientations through the guise of enforcing federal nondiscrimination law. *See* Dkt. # 1 ¶¶ 85–87. Through the CoC Discrimination Condition, recipients seemingly either have to pledge to recognize the President's incorrect and legally unsupported interpretation across all of their operations or forgo funding.

The CoC Discrimination Condition also requires the recipient to agree "its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions" for purposes of the False Claims Act (FCA), 31 U.S.C. §§ 3729 et seq. Marshall Decl., Ex. B at 3. The FCA imposes liability on "any person" who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). For FCA liability to attach, the alleged misrepresentation must be "material to the Government's payment decision"—a liability element the U.S. Supreme Court has called "demanding." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192, 194 (2016). Each violation of the FCA is punishable by a civil penalty of up to $27,894, plus

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 4
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-38

mandatory treble damages sustained by the government. 31 U.S.C. § 3729(a); 28 C.F.R. § 85.5(a). Given the demands of proving materiality and the FCA's severe penalties, this represents another effort to coerce compliance with the President's political agenda by purporting to force recipients to concede an essential element that the federal government has the burden of establishing in a court of law.

**CoC Immigration Enforcement Condition:** The CoC Agreements provide that "[n]o state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation." Marshall Decl., Ex. B at 3. This is a near-verbatim recitation of section 2(a)(ii) of Executive Order 14218, "Ending Taxpayer Subsidization of Open Borders." *See* Exec. Order No. 14218, § 2(a)(ii), 90 Fed. Reg. 10581 (Feb. 19, 2025) ("Immigration Order").[4] The latest CoC Agreements have been updated to recite this section of the Immigration Order. McSpadden Decl., ¶ 13, Ex. B at 34.

**CoC Immigration Verification Condition:** The CoC Agreements impose requirements purportedly related to immigration verification requirements:

> Subject to the exceptions provided by [the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (PRWORA)], the recipient must use [the Systematic Alien Verification for Entitlements (SAVE) system], or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien

---

[4] A district court has preliminary enjoined the federal government from "directly or indirectly taking any action to withhold, freeze, or condition federal funds from" sixteen cities and counties—including plaintiffs King County, Santa Clara, and San Francisco—on the basis of Section 2(a)(ii) of the Immigration Order. *City & Cnty. of San Francisco v. Trump*, No. 25-cv-01350-WHO, 2025 WL 1186310, at *3 (N.D. Cal. Apr. 24, 2025). That case raises facial challenges to the President's Immigration Order, while in this case, Plaintiffs challenge HUD's actions attaching new unlawful conditions to the CoC grants at issue and King County challenges FTA's actions attaching new unlawful conditions to the FTA grants at issue.

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 5
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

who entered the United States illegally or is otherwise unlawfully present in the United States.

Marshall Decl., Ex. B at 3; *see also id.* ("The recipient must administer its grant in accordance with . . . any applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services [*sic*] may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws."). This condition tracks the Immigration Order's provision directing agency heads to "enhance eligibility verification systems, to the maximum extent possible, to ensure that taxpayer-funded benefits exclude any ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States." Exec. Order 14218, § 2(a)(iii).

**CoC Gender Ideology Condition:** The CoC Agreements require the recipient to agree it "shall not use grant funds to promote 'gender ideology,' as defined in [Executive Order] 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government." Marshall Decl., Ex. B at 3. Executive Order 14168, in turn, directs federal agencies to "take all necessary steps, as permitted by law, to end the Federal funding of gender ideology" and "ensure grant funds do not promote gender ideology." Exec. Order No. 14168, §§ 3(e), 3(g), 90 Fed. Reg. 8615 (Jan. 20, 2025) ("Gender Ideology Order"). To the extent the Gender Ideology Order defines "gender ideology," it states: "'[g]ender ideology' replaces the biological category of sex with an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as and thus become women and vice versa, and requiring all institutions of society to regard this false claim as true." *Id.* § 2(f).

**CoC Abortion Condition:** The CoC Agreements prohibit the recipient from using grant funds "to fund or promote elective abortions, as required by [Executive Order] 14182, Enforcing

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 6
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-40

the Hyde Amendment." Marshall Decl., Ex. B at 3. Executive Order 14182 in turn declares it "the policy of the United States . . . to end the forced use of Federal taxpayer dollars to fund or promote elective abortion." Exec. Order No. 14182, § 1, 90 Fed. Reg. 8751 (Jan. 24, 2025) ("Abortion Order"); *see also* Memorandum from Acting Director of OMB Matthew J. Vaeth to Heads of Executive Departments and Agencies (Jan. 24, 2025), https://www.whitehouse.gov/wp-content/uploads/2025/03/M-25-12-Memorandum-on-Hyde-Amendment-EO.pdf ("OMB Memo"). The condition does not define what it means to "promote elective abortion."

The intent behind these new conditions is readily apparent. On April 4, 2025, Defendant Turner sent a letter ("Turner Letter") to all HUD grant recipients confirming that the CoC Immigration Verification and Enforcement Conditions were being imposed to "compl[y] with" the Immigration Order. *See* Marshall Decl., Ex. C. Defendant Turner then stated that "HUD is carrying out Present Trump's executive orders, mission, and agenda," by "[a]lign[ing] all programs, trainings, and *grant agreements* with the President's Executive Orders, removing diversity, equity, inclusion (DEI)." Press Release, HUD, *HUD Delivers Mission-Minded Results in Trump Administration's First 100 Days* (Mar. 11, 2025), https://www.hud.gov/news/hud-no-25-059 (emphasis added). Likewise, on the media platform "X," Defendant Turner expressed how his agency intends to enforce the new conditions: "CoC funds . . . will not promote DEI, enforce 'gender ideology,' support abortion, subsidize illegal immigration, and discriminate against faith-based groups." Scott Turner (@SecretaryTurner), X (Mar. 13, 2025, 11:47 AM), https://x.com/SecretaryTurner/status/1900257331184570703.

Plaintiffs now face deadlines to sign the CoC Agreements. Once a grant is conditionally awarded, HUD regulations require recipients to sign CoC grant agreements "[n]o later than 45 days from the date when all conditions are satisfied." 24 C.F.R. § 578.23(a). Plaintiffs are

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 7
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-41

concerned that HUD will attempt to use this regulation as a pretense to cancel their grant funds if the CoC Agreements are not signed within 45 days of when Plaintiffs received them. For example, San Francisco faces an apparent May 8, 2025 deadline to sign its CoC Agreement; King County and Santa Clara face an apparent May 10, 2025 deadline. McSpadden Decl., ¶ 15; Marshall Decl., ¶ 12; Kaminski Decl., ¶ 20. New York faced an apparent May 5, 2025 deadline and returned the Agreement with changes excising the new conditions. Warren Decl., ¶¶ 17–18. Other plaintiffs have similar considerations. *See, e.g.*, Dillon Decl., ¶¶ 10–11; Brell-Vujovic Decl., ¶ 9.

Plaintiffs face an immediate need to receive the CoC funds because they have begun contracting with service providers who are already incurring costs and expect reimbursement; households reliant on private rentals are at risk of eviction if there is even a short-term interruption of rent payments covered by CoC funds; and the interruption of funds could threaten the operation of supportive housing. Marshall Decl., ¶¶ 17–21, Dillon Decl., ¶¶ 17–24, Johns Decl., ¶ 16; Warren Decl., ¶¶ 19–21; Barbee Decl., ¶¶ 19, 26–29; McSpadden Decl., ¶¶ 16–19; Kaminski Decl., ¶¶ 24–30; Brell-Vujovic Decl., ¶ 12. Ultimately, any delay or loss of funding would result in disruption of services and cause irreparable damage to individuals' lives. *See id.*

## C.    FTA Attaches New Unlawful Conditions to Mass Transit Funding

Also in jeopardy are various mass transit grants already awarded by FTA. These grants stem primarily from four statutory programs. *See* 49 U.S.C. § 5307(a)(1) (establishing urbanized area formula grants); *id.* § 5309(b) (fixed guideway capital investment grants); *id.* § 5337(b), (f) (state of good repair and replacement of rail rolling stock grants); *id.* § 5339(a)(2), (b), (c) (bus purchase and maintenance grants).

On March 26, 2025, FTA promulgated an updated Master Agreement that governs all grants under the four programs discussed above. Morrison Decl., Ex. B-1. This new Master

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 8
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-42

Agreement imposed new conditions on FTA grants (collectively, "FTA Grant Conditions") that mirror the conditions imposed on HUD grants.

**FTA EO Condition:** The March 26 Master Agreement requires that the recipient "agree[] to comply with all applicable federal requirements and follow applicable federal guidance," *id.* at 15, which includes "an applicable federal law, regulation, or *executive order*," *id.* at 7 (emphasis added).

**FTA Discrimination Conditions:** The March 26 Master Agreement imposed a new DEI condition:

> (1) Pursuant to section (3)(b)(iv)(A), Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity [("DEI Order")], the Recipient agrees that its compliance in all respects with all applicable Federal antidiscrimination laws is material to the government's payment decisions for purposes of [the FCA].
>
> (2) Pursuant to section (3)(b)(iv)(B) [of the DEI Order], by entering into this Agreement, the Recipient certifies that it does not operate any programs promoting [DEI] initiatives that violate any applicable Federal anti-discrimination laws.

*Id.* at 59.

While FTA grants have long required compliance with nondiscrimination laws, DOT has confirmed its intent to enforce a sweeping interpretation of these conditions. On April 24, 2025, Secretary of Transportation Sean Duffy sent a letter ("Duffy Letter") to all recipients of DOT grants, which includes FTA grants, elaborating on the Trump administration's policy requiring federal recipients to eliminate DEI initiatives everywhere. Morrison Decl., Ex. D. The Duffy Letter asserts that "[w]hether or not described in neutral terms, any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called 'diversity, equity, and inclusion,' or 'DEI,' goals, presumptively violates Federal

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 9
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-43

law." *Id.* at 2.

The Duffy Letter also addresses immigration: "In addition, your legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law." *Id.* The Letter continues: "Declining to cooperate with the enforcement of Federal immigration law or otherwise taking action intended to shield illegal aliens from ICE detection contravenes Federal law and may give rise to civil and criminal liability." *Id.* at 3.

The Duffy Letter concludes: "Adherence to your legal obligations is a prerequisite for receipt of DOT financial assistance. Noncompliance with applicable Federal laws, or failure to cooperate generally with Federal authorities in the enforcement of Federal law, will jeopardize your continued receipt of Federal financial assistance from DOT and could lead to a loss of Federal funding from DOT." *Id.*

The next day, April 25, 2025, FTA issued another updated Master Agreement containing the same FTA DEI and EO Conditions. Morrison Decl., Ex. A ("Master Agreement").

**FTA Immigration Enforcement Condition:** This latest Master Agreement added a condition requiring the recipient to cooperate with federal immigration enforcement:

> The Recipient . . . will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

*Id.* at 58.

Plaintiff King County has over $446 million of appropriated FTA funds pursuant to the above-described FTA grant programs, accounting for a significant portion of its entire public

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 10
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-44

transit budget for Fiscal Year 2025. *See* Morrison Decl., ¶¶ 10, 12, 18. These funds were awarded without any of the conditions challenged here. *Id.* ¶¶ 19–20.

King County faces immediate need to draw down from awarded funds to continue developing, constructing, maintaining, repairing, and replacing its wide range of transit vehicles and facilities. Morrison Decl., ¶¶ 12, 27. Moreover, King County needs to understand whether it can both draw down and plan on submitting proposals in the immediate future to plan for Metro Transit needs in Fiscal Year 2026 and beyond. *Id*. ¶¶ 16–18. Without FTA grant funds, King County Metro's service network would likely have to be cut back in ways that would significantly reduce mobility options for a large portion of King County's population, while slowing the movement of freight and goods across the region. *Id*. King County is not aware of any other existing or proposed funding source that could replace FTA grant funds. *Id.*

### III.    ARGUMENT

#### A.    Legal Standard

A temporary restraining order is warranted where the moving party establishes (1) it is likely to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (temporary restraining order and preliminary injunction analysis is "substantially identical"). All of these factors strongly favor Plaintiffs.

#### B.    Plaintiffs Have Standing to Challenge the CoC and FTA Grant Conditions

Plaintiffs face imminent, direct injuries as a result of the CoC and FTA Grant Conditions. To establish standing, a plaintiff must show it has suffered or will suffer an injury that is "concrete,

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 11
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-45

particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).

"A loss of funds promised under federal law satisfies Article III's standing requirement." *City & Cnty. of San Francisco v. Trump* ("*San Francisco*"), 897 F.3d 1225, 1235 (9th Cir. 2018) (cleaned up); *see also Dep't of Commerce v. New York*, 588 U.S. 752, 767 (2019) ("[L]os[ing] out on federal funds . . . is a sufficiently concrete and imminent injury to satisfy Article III . . . ."); *Arizona v. Yellen*, 34 F.4th 841, 853 (9th Cir. 2022) ("States have standing when an allegedly unconstitutional funding offer is made to them, and they do not need to first violate a condition of an allegedly unconstitutional contract . . . ."). Here, Plaintiffs have been awarded millions in CoC funds that they stand to lose unless they accept unlawful new conditions. Marshall Decl., ¶¶ 10–16; McSpadden Decl., ¶¶ 10–19; Dillon Decl., ¶¶ 7–13; Johns Decl., ¶¶ 10–15; Warren Decl., ¶¶ 10–18; Barbee Decl., ¶¶ 8–25; Kaminski Decl., ¶¶ 13–21; Brell-Vujovic Decl., ¶¶ 9–12. Likewise, King County stands to lose nearly half a billion dollars in appropriated FTA grants unless it accepts new unlawful conditions. Morrison Decl., ¶¶ 10, 19–27. This imminent loss of funds or infringement of rights is traceable to the unlawful conditions and redressable by an order barring their enforcement.

### C. Plaintiffs Are Likely to Succeed on the Merits

#### 1. The Grant Conditions Violate the Separation of Powers

"[U]nless and until Congress confers power on" them, agencies have "literally . . . no power to act . . . ." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). No statute gives HUD or FTA the power to impose conditions on CoC and FTA grants remotely approaching those at issue here. Rather than implement Congress's will, HUD and FTA are attempting to condition duly appropriated funds on compliance with the President's policy agenda as expressed in his

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 12
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Executive Orders. But the President lacks "his own constitutional powers" to add new conditions to federal funds. *San Francisco*, 897 F.3d at 1234 (cleaned up). Defendants' actions therefore usurp Congress's "power of the purse" and violate bedrock separation of powers principles. *Id.* at 1231.

The Constitution "exclusively grants the power of the purse to Congress, not the President." *Id.* Accordingly, there is no inherent executive authority to place conditions on the receipt of federal funds—any such authority must be given to the executive by the legislature. *See City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019) (agency grant conditions imposed without statutory authority were "ultra vires"). When Congress attaches conditions to federal funds, it must do so "unambiguously." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (cleaned up). Absent an express delegation of congressional authority, the President's power to impose conditions on grants "is at its lowest ebb." *San Francisco*, 897 F.3d at 1233 (cleaned up).

No statute authorizes Defendants to impose conditions on CoC and FTA grants that seemingly prohibit all types of DEI, require cooperation with immigration enforcement, require recipients to use specific automated systems for verifying participants' immigration status, prohibit gender inclusivity, or prohibit discussion of lawful abortion. Instead, Congress has only attached conditions to CoC and FTA grants that closely relate to the purposes of the programs they fund, and has imposed specific procedures for implementing an eligibility verification system requirement, which have not occurred.

### a.) Congress has not authorized the CoC Grant Conditions (All Plaintiffs)

HUD's administration of the CoC program is authorized and governed by statutory directives. These statutes do not authorize the CoC Grant Conditions.

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 13
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-47

**The Assistance Act.** The Assistance Act sets out conditions that CoC recipients must accept—none of which relate to prohibiting DEI, enforcing federal immigration law, verifying immigration status, denying the existence of gender-diverse people, or prohibiting "promotion" of abortion. *See* 42 U.S.C. § 11386(b) (requiring recipients to, *inter alia*, "monitor and report to the Secretary the progress of the project," "take the educational needs of children into account when families are placed in emergency or transitional shelter," and "place families with children as close as possible to their school of origin"). And while the Act requires recipients to comply with "other terms and conditions" that "the Secretary may establish to carry out" the program "in an effective and efficient manner," no plausible interpretation of this clause authorizes wide-ranging conditions sent down by Executive fiat on policy issues unrelated to homelessness assistance. *Id.* § 11386(b)(8). All of the statutory CoC conditions concern transparency, accountability, and meeting the needs of children; none concern the new conditions HUD seeks to impose. 42 U.S.C. § 11386(b)(1)–(7). Thus, no plausible reading of the Assistance Act "unambiguously" authorizes the conditions here. *Arlington Cent.*, 548 U.S. at 296.

HUD's regulations implementing the Assistance Act are in accord with this straightforward interpretation. They set forth specific grant conditions that track the statutory language and/or closely relate to program administration. 24 C.F.R. § 578.23(c). And they allow for additional "terms and conditions" only if "establish[ed] by [the NOFO]." *Id*. § 578.23(c)(12). But none of the conditions challenged here are contained within HUD's regulations. Nor were any included in the NOFO. To the contrary, the NOFO required applicants to explain how they would "advance racial equity" and address "the needs of LGBTQ+ individuals." FYs 2024/2025 NOFO at 85, 97.

**The Appropriations Act.** The Consolidated Appropriations Act, Pub. L. 118-42, 138 Stat. 25 (Mar. 9, 2024) ("Appropriations Act"), which appropriated funds for Fiscal Year 2024 CoC

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 14
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-48

grants, does not authorize HUD to condition the receipt of funds on compliance with the President's policy directives. Instead, it sets specific priorities concerning CoC funding that have nothing to do with the new CoC Conditions. *See* Dkt. # 1 ¶ 36. And while the Appropriations Act references the Hyde Amendment, which bars using federal funds to pay for or require a person to facilitate an abortion, Pub. L. 118-42, §§ 202–03, 138 Stat. 153, it does not prohibit federally funded programs from "*promot[ing]* elective abortions," which could be read to include providing program participants with information about lawful abortions. By unilaterally attaching a new requirement to federal funds, HUD seeks to "coopt Congress's power to legislate" and rewrite the law. *San Francisco*, 897 F.3d at 1234.

**PRWORA.** Finally, the CoC Immigration Verification Condition references PRWORA. Marshall Decl., Ex. B at 3. But absent implementing regulations, PRWORA does not authorize HUD to require grant recipients to verify program participants' immigration status for programs that are not "Federal public benefits" as defined in PRWORA. *See* 8 U.S.C. § 1611(c). Even where PRWORA requires eligibility verification, the statute does not authorize HUD to require grant recipients use an automated verification system such as SAVE as a condition to receiving funds. PRWORA provides that noncitizens without qualifying immigration status are ineligible for certain "Federal public benefit[s]." 8 U.S.C. § 1611(a). But it does not require grant recipients that administer federally funded programs to verify eligibility *unless* the U.S. Attorney General promulgates regulations implementing a verification requirement. *See id.* § 1642(a). Indeed, PRWORA ties any verification requirements to the promulgation of regulations. *Id.* § 1642(b) ("Not later than 24 months after the date the regulations described in subsection (a) are adopted, a State that administers a program that provides a Federal public benefit shall have in effect a verification system that complies with the regulations.").

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 15
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-49

The Attorney General has issued interim guidance and a proposed verification rule, but never implemented a final rule. *See* Interim Guidance on Verification of Citizenship, Qualified Alien Status and Eligibility Under Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 62 Fed. Reg. 61344 (Nov. 17, 1997); Verification of Eligibility for Public Benefits, 63 Fed. Reg. 41662 (Aug. 4, 1998) (proposed rule). This failure to promulgate a final regulation left in place the interim guidance, which requires only the examination of identity and immigration documentation. 62 Fed. Reg. at 61348–49.

Moreover, Congress placed the responsibility of devising a verification system on the Attorney General—not local governments and others that administer federally funded programs. Most plaintiffs do not even have access to SAVE. Marshall Decl., ¶ 14; Barbee Decl., ¶ 22; McSpadden Decl., ¶ 9; Brell-Vujovic Decl., ¶ 10. By shifting the onus onto recipients to gain access to and then verify eligibility using SAVE (or an equivalent system) without the benefit of implementing regulations and the two-year ramp-up period that PRWORA requires, HUD is undermining Congress' statutory scheme and attempting to rewrite PRWORA.

### b.) *Congress has not authorized the FTA Grant Conditions (King County Only)*

None of the statutes authorizing the FTA mass transit grants at issue require the recipient to certify it does not "promote DEI," concede that its compliance is material for purposes of the FCA, or "cooperate" with federal immigration enforcement. Indeed, "[h]ere, the Administration has not even attempted to show that Congress authorized it to withdraw federal grant moneys from jurisdictions that" refuse to execute such certifications—when interpreted, as explained in the Duffy Letter, to effectively prohibit all forms of DEI—"[n]or could it." *San Francisco*, 897 F.3d at 1234. Nor do any of the annual appropriations acts for the last four years attach such conditions

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 16
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-50

to transit grants or authorize FTA to leverage transit funding to further the President's agenda. *See*

Dkt. # 1 ¶ 60.

### c.) The CoC and FTA Grant Conditions are not germane to the programs at issue

These new CoC and FTA Grant Conditions are especially problematic because they exceed

even Congress' power to condition federal funds. The Spending Clause only permits Congress to

impose conditions germane "to the federal interest in [the] particular" program. *South Dakota v.*

*Dole*, 483 U.S. 203, 207 (1987) (cleaned up). Accordingly, any CoC and FTA conditions must

have some "nexus" with the purpose of the homelessness assistance and mass transit funds at issue.

*See Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 532 (N.D. Cal. 2017). But there is no

nexus at all between the challenged conditions (as Defendants intend to enforce them) and the

federal interest in the CoC and FTA funds here. *See id.* at 532-33 (no nexus between immigration

enforcement and "most categories of federal funding," such as Medicare, transportation, child

welfare services, etc.).

In sum, Congress did not authorize any of the CoC or FTA Grant Conditions. Because the

Executive may not unilaterally "withhold properly appropriated funds in order to effectuate its

own policy goals," Plaintiffs are likely to succeed on the merits. *San Francisco*, 897 F.3d at 1233–

35.

### 2. The Grant Conditions Are Unconstitutionally Vague

Plaintiffs are also likely to succeed in showing that the CoC and FTA Grant Conditions

violate the Fifth Amendment's vagueness doctrine by imposing opaque prohibitions designed to

induce recipients to self-censor to avoid liability and confer unbridled enforcement discretion on

Defendants. A requirement imposed by the government is unconstitutionally vague if it fails to

either (1) provide a "person of ordinary intelligence a reasonable opportunity to know what is

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 17
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-51

prohibited" or (2) "provide explicit standards for those who apply" the requirement, thereby encouraging "arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). The CoC and FTA Grant Conditions fail on both grounds.

Initially, the CoC EO Condition is vague in stating that the CoC Agreements are "governed" by all Executive Orders. The FTA EO Condition is similarly vague in requiring the recipient to "comply" with Executive Orders. Nothing in any of the Executive Orders places any direct requirements on grant recipients. Nor could they, since Executive Orders can only impose requirements on executive agencies, officers, and employees—not private parties or state and local governments. *See* U.S. Dep't of Justice, Executive Orders, https://bja.ojp.gov/program/it/privacy-civil-liberties/authorities/executive-orders (executive orders are "official documents . . . through which the President of the United States manages the operations of the Federal Government"). Accordingly, it is nonsensical to require Plaintiffs to comply with Executive Orders and unclear whether the EO Conditions purport to do so, rendering the agreements vague.

Moreover, the specific implementation of the Executive Orders by HUD and FTA contains vague wording susceptible to arbitrary enforcement that forces grant recipients to guess at what is prohibited. For instance, the FTA Discrimination Condition (and the DEI Order incorporated therein) provide no guidance on what "programs promoting [DEI] initiatives" supposedly violate "Federal anti-discrimination law," nor do they define the term "illegal DEI and DEIA policies" or explain what policies, programs, and activities are purportedly covered. And while the CoC Discrimination Condition purports to simply require certification of compliance with federal nondiscrimination law, the DEI Order and subsequent agency letters broadly interpreting the law to prohibit all DEI—contrary to courts that have addressed the issue—render the condition vague. *See* Letter from Pam Bondi, Attorney General, to all DOJ Employees (Feb. 5, 2025),

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 18
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

https://www.justice.gov/ag/media/1388501/dl?inline (stating DOJ will "penalize" and "eliminate" "illegal DEI and DEIA" activities); Morrison Decl., Ex. D at 2 (asserting programs "designed to achieve so called [DEI] goals[] presumptively violate[] Federal Law"); Press Release, HUD, *supra*; Scott Turner (@SecretaryTurner), X, *supra*.

Further, the CoC Immigration Enforcement Condition (which incorporates by reference the Immigration Order) fails to define the terms "facilitates," "subsidization," or "promotion" with respect to "illegal immigration," leaving federal grant recipients without fair notice of what activities agencies will deem to violate the prohibition. Similarly, the FTA Immigration Enforcement Condition fails to define the terms "cooperate," "cooperating," "impeding," and "enforcement" with respect to "Federal immigration law."

The definition of "gender ideology" adopted in the CoC Gender Ideology Condition is not only demeaning and violative of the Constitution's equal protections guarantees, but also idiosyncratic and unscientific. Similarly, the phrase "elective abortion" in the CoC Abortion Condition has no scientific or legal meaning. And the scope of both conditions is made even less clear by the term "promote," which leaves Defendants free rein to determine what policies and activities related to these topics conflict with President Trump's policy agenda.

Each of these conditions requires people of ordinary intelligence to guess at what is prohibited. *See Grayned*, 408 U.S. at 108. By the same token, their lack of clarity gives HUD and FTA unfettered discretion to determine what conduct they will deem to be "promot[ing] DEI," "gender ideology," or "elective abortions" or "facilitat[ing]," "subsidiz[ing]," or "promot[ing]" unlawful immigration. These vague requirements—against a backdrop of threatened FCA enforcement—force recipients to self-censor by "steer[ing] far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Id.* at 109 (cleaned up). Indeed, as one

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 19
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

court held regarding a condition identical to the FTA Discrimination Condition, the condition's meaning "is left entirely to the imagination," forcing grant recipients into the "perhaps impossible position" of having to alter their behavior "or risk making a certification that will be deemed false . . . ." *Chicago Women in Trades v. Trump*, No. 25-cv-02005, 2025 WL 933871, at *8 (N.D. Ill. Mar. 27, 2025). Each of these conditions suffers this same vagueness defect. Plaintiffs are likely to succeed on the merits of this claim.

### 3. Imposing New Conditions Violates the APA

The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary" and "capricious," "not in accordance with law," "contrary to constitutional right," "in excess of statutory jurisdiction," or "without observance of procedure required by law." 5 U.S.C. § 706(2). Plaintiffs are likely to prevail in showing that imposing the unlawful CoC and FTA Grant Conditions violates each of these requirements.[5]

First, as discussed above, the CoC and FTA Grant Conditions are "in excess of statutory jurisdiction," "not in accordance with law," and "contrary to constitutional right," because they do not derive from a congressional delegation of authority and they violate the constitutional protections addressed above. 5 U.S.C. § 706(2). The CoC Immigration Verification Condition is not in accordance with law because the Attorney General has not promulgated regulations

---

[5] Imposing new conditions on recipients is a "final agency action" subject to review under the APA. *See id.* § 704. Final agency actions "mark the consummation of the agency's decisionmaking process" and are those "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). As several courts have held in similar cases, the decision to impose new conditions on federal grants satisfies both tests because it "articulate[s] that certain funds" will "require adherence to the" new conditions and "opens up the [recipient] to potential legal consequences," including withholding of funds if the recipient declines to accept the conditions. *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1031–32 (N.D. Cal. 2018); *see also Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308, 328–29 (S.D.N.Y. 2018) (same).

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 20
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

requiring a verification system, and HUD cannot unilaterally impose a verification system that PRWORA requires to be accomplished by notice-and-comment rulemaking.

Second, the CoC and FTA Grant Conditions are arbitrary and capricious because they fail the basic requirement that agency action be "reasonable and reasonably explained." *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (cleaned up). To pass muster, an agency must offer "a satisfactory explanation for its action" and can neither "rel[y] on factors which Congress has not intended it to consider" nor simply ignore "an important aspect of the problem . . . ." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.* ("*State Farm*"), 463 U.S. 29, 43 (1983). While agencies are free to change their existing policies, they must "display awareness that" they are doing so, provide "good reasons for the new policy," and demonstrate that they have taken account of "reliance interests" engendered by the prior policy. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Here, HUD has offered no explanation for any of the CoC Grant Conditions except the Immigration Enforcement and Immigration Verification Conditions. As to those two, HUD's explanation, articulated in the post-hoc Turner Letter, is simply that the President ordered them. *See* Turner Letter at 1 (describing HUD Secretary's "responsibility to effectively implement the" Immigration Order and informing recipients that "HUD senior leadership" review would "ensure that HUD programs are compliant with" that order). "[A]n executive order," however, "is not 'law,'" *California v. EPA*, 72 F.4th 308, 318 (D.C. Cir. 2023), and "an agency must defend its actions based on the reasons it gave when it acted, not with post hoc rationalizations." *Lotus Vaping Techs., LLC v. U.S. Food & Drug Admin.*, 73 F.4th 657, 668 (9th Cir. 2023) (cleaned up). And complying with an executive order neither exempts the agency from the "reasoning, deliberation,

and process" required by the APA, nor permits it to "flip-flop" "on the whims of each new administration." *California v. Bernhardt*, 472 F. Supp. 3d 573, 600–01 (N.D. Cal. 2020).

Nowhere does the Turner Letter address why requiring recipients to establish automated verification systems is warranted or authorized absent regulations implementing a verification system requirement and two-year notice. Nor does it demonstrate consideration of the programmatic impacts likely to result if recipients are required to use SAVE or an equivalent verification system. HUD may not ignore these key "aspect[s] of the problem," *State Farm*, 463 U.S. at 43, simply because the President ordered it. *See California*, 472 F. Supp. 3d at 600–01 (agency's action based on executive order did not excuse it from explaining change in policy). And while the Letter seems to acknowledge—albeit, implicitly—a policy change, in explaining that "going forward" HUD will "take steps to ensure" federal funds do not "support 'sanctuary' policies," it does not explain the departure, consider reliance interests, or even define what is a "sanctuary" policy. Turner Letter at 1. Indeed, courts have enjoined executive orders using that term as vague from this Trump term and the last. *See, e.g., City & Cnty. of San Francisco*, 2025 WL 1186310, at *2; *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 534–36 (N.D. Cal. Apr. 25, 2017). Similarly, HUD fails to explain the Gender Ideology Condition's conflict with HUD's own regulations mandating "[e]qual access" to CoC programs in accordance with participants' "gender identity." 24 C.F.R. § 5.106(b)–(c).

The FTA Grant Conditions are no better supported. The Duffy Letter asserts that policies "designed to achieve so-called [DEI] goals[] presumptively violate[] Federal law," and that DOT "must ensure that discrimination based on [protected status] does not exist in the programs or activities it funds . . . ." Morrison Decl., Ex. D at 2. But this explanation is inconsistent with the actual grant condition, which requires recipients to certify that they do not operate *any* DEI

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

program FTA or DOT deems prohibited—whether federally funded or not. *Id.*, Ex. A at 58. And it does not acknowledge, much less explain, its departure from several court decisions holding that affinity group and other DEI programs premised on racial, gender, or other classifications and open to all comply with equal protection and federal nondiscrimination law. *See, e.g., Diemert v. City of Seattle*, No. 2:22-cv-1640, 2025 WL 446753, at *17–18 (W.D. Wash. Feb. 10, 2025) (affinity groups "open to any City employee" did not violate equal protection); *cf. Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 540–41 (7th Cir. 2005) (recognition of affinity groups based on common social identity, but not religion, did not violate Title VII).

Third, in reversing longstanding policies without explanation, HUD and FTA failed to observe procedure required by law. *See* 5 U.S.C. § 706(2)(D). Both HUD and FTA have adopted regulations requiring those agencies to proceed by notice-and-comment rulemaking for certain matters. *See* 24 C.F.R. § 10.1 ("It is the policy of [HUD] to provide for public participation in rulemaking with respect to all HUD programs and functions, including matters that relate to . . . grants . . . ."); 49 C.F.R. § 601.22(a) (FTA regulations). FTA is also subject to statutory notice-and-comment requirements for certain conditions pertaining to the FTA grants. *See* 49 U.S.C. § 5334(k)(1) (FTA Administrator must "follow applicable rulemaking procedures under [5 U.S.C. § 553, the APA's notice-and-comment requirement] before [FTA] issues a statement that imposes a binding obligation on recipients of Federal assistance under this chapter"); *id.* § 5334(k)(2) (defining "binding obligation" as "a substantive policy statement, rule, or guidance document issued by [FTA] that grants rights, imposes obligations, produces significant effects on private interests, or effects a significant change in existing policy").

Here, the CoC and FTA Grant Conditions purport to impose binding obligations that substantively change existing law and policies, including existing federal nondiscrimination laws

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 23
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-57

(Title VI), immigration verification requirements (PRWORA), gender identity regulations (24 C.F.R. § 5.106 (mandating equal access to CoC programs in accordance with gender identity)), and abortion (Hyde Amendment). *See, e.g.*, *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 449 (9th Cir. 1994) ("Substantive rules . . . create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress."); *Erringer v. Thompson*, 371 F.3d 625, 630 (9th Cir. 2004) (a rule is substantive, i.e., "legislative," inter alia, if there is no "adequate legislative basis for enforcement action" without the rule, or if the rule "effectively amends a prior legislative rule"). In imposing these new conditions, HUD and FTA failed to comply with the notice-and-comment requirements set forth in their own regulations and in 49 U.S.C. § 5334(k)(1).

Plaintiffs are likely to succeed in establishing that attaching the CoC and FTA Grant Conditions exceeded the agencies' statutory jurisdiction, violated the Constitution, was arbitrary and capricious, and failed to observe required procedure in violation of the APA.

### D.    Plaintiffs Will Suffer Immediate and Irreparable Harm If the Conditions Are Not Blocked

Based on federally imposed deadlines, Plaintiffs must decide as early as May 8 to either accept conditions that violate their constitutional rights and those of their constituents or risk losing hundreds of millions in federal funding for vital public services. McSpadden Decl., ¶ 15; Marshall Decl., ¶ 12. New York signed a CoC Agreement but excised all of the new unlawful conditions, placing it in immediate fear of losing its grant. The deprivation of rights is itself an irreparable harm, as a plaintiff may suffer constitutional injury from being forced into a "Hobson's choice" between accepting unconstitutional conditions and incurring financial penalties. *See*, *e.g.*, *Hecox v. Little*, 104 F.4th 1061, 1088 (9th Cir. 2024); *Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th

PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 24
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-58

Cir. 2017); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057–59 (9th Cir. 2009). And loss of the funds at issue would result in immediate, irreparable, and reverberating harms to Plaintiffs—including upending their budgets, potentially forcing reductions in their workforce, and either cutting off critical homelessness services, as well as King County's transit services, or forcing Plaintiffs to divert resources from other public services. *See* Marshall Decl., ¶¶ 17–21; Dillon Decl., ¶¶ 12–24; Johns Decl., ¶ 16; Warren Decl., ¶¶ 18–21; Barbee Decl., ¶¶ 25–29; Kaminski Decl., ¶¶ 25–34; McSpadden Decl., ¶¶ 16–19; Brell-Vujovic Decl., ¶ 12; Morrison Decl., ¶¶ 10–18. *see also City & Cnty. of San Francisco*, 2025 WL 1186310, at *3 (finding "irreparable injury in the form of budgetary uncertainty, deprivation of constitutional rights, and undermining trust between the Cities and Counties and the communities they serve"; collecting cases).

For example, without CoC funding, 700 households in King County who live in private rentals would be at risk of eviction in the short-term because their rent would not be paid, with 2,144 households impacted in total. Marshall Decl., ¶¶ 19–20. In San Francisco, close to 2,000 program participants would "lose their housing subsidies and services and [would] be at risk of imminent evictions," causing individuals and families to slip back into homelessness. McSpadden Decl., ¶ 17. "Interruption of funding" from the CoC program supporting "more than 1,400 households is estimated to cost [San Francisco] $17 million in direct rehousing costs." *Id.* Santa Clara would lose one third of its budget for permanent supportive housing and would be forced to choose between redirecting County General Funds away from other services and programs towards programs for the homeless or considering dramatically cutting the programs, which would lead to higher rates of homelessness. Kaminski Decl., ¶¶ 29–31.

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 25
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-59

The loss of FTA funding would force King County to substantially curtail its existing and near-future planned transit operations and entirely abandon some elements of its structure. Morrison Decl., ¶ 16. King County would have to fundamentally rework its longstanding financial plans and procedures, capital project delivery process, and service delivery models in ways that could have significant impacts on the County's mission, its employees, and its riders. *Id.* ¶ 18. "To put it plainly, without FTA grant funds, [King County's] service network would likely have to be cut back in ways that could significantly reduce mobility options for a large portion of King County's population while potentially increasing traffic congestion and slowing the movement of freight and goods across our region." *Id.*

These extensive harms would not only "impact [Plaintiffs'] ability to carry on day-to-day operations and fulfill [their] legal obligations," they could be permanent if HUD or FTA "transfer, re-allocat[e], or re-obligat[e]" grants to other recipients. *Climate United Fund v. Citibank, N.A.*, No. 25-cv-698, 2025 WL 842360, at *9–10 (D.D.C. Mar. 18, 2025); *see also Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 1:25-cv-00333-ABA, 2025 WL 573764, at *28 (D. Md. Feb. 21, 2025) (loss of federal grants was irreparable harm where "monetary recovery" was "likely to be precluded" in "light of Defendants' sovereign immunity").

**E.      The Balance of Equities Weigh in Plaintiffs' Favor, and a Temporary Restraining Order Is in the Public Interest**

The equities and public interest, which merge when the government is a party, tip sharply in Plaintiffs' favor. *Wolford v. Lopez*, 116 F.4th 959, 976 (9th Cir. 2024). The threat of harm to Plaintiffs far outweighs the federal government's interests in immediately imposing the conditions, and preserving Plaintiffs' constitutional rights is in the public interest. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 26
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

a party's constitutional rights.") (cleaned up). The balance of equities decidedly supports a temporary restraining order here, and the Court should preserve the status quo until Plaintiffs' forthcoming motion for a preliminary injunction can be decided.

Whatever interest the Executive may have in introducing new grant conditions at this stage of the grant cycle, and in enforcing them during the pendency of this litigation, pales in comparison to Plaintiffs' irreparable harm from enforcement of the new conditions. A temporary restraining order would not harm the federal interest, but merely maintain the status quo as to Defendants' administration of the CoC and FTA programs. "[B]y establishing a likelihood that [the government's] policy violates the U.S. Constitution," Plaintiffs have also "established that both the public interest and the balance of the equities favor a preliminary injunction." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).

## IV.    CONCLUSION

Federal agencies cannot dictate policy through grant conditions that are not authorized by Congress, and indeed are beyond Congress' power to authorize; are vague; were not adopted pursuant to required process; and that ultimately force local governments to adopt federal policy in contravention of the political will of their constituents. The harm to Plaintiffs is imminent with signatures on grant agreements due as early as May 8, 2025. Plaintiffs respectfully ask the Court to enter a temporary restraining order no later than that date preserving the status quo that existed when Plaintiffs and their Continuums applied for, and Defendants conditionally granted, the CoC and FTA grants at issue, and barring Defendants from imposing, enforcing, or otherwise denying grants to Plaintiffs and their Continuums based on new unlawful conditions. Such a temporary restraining order is necessary to avoid harm to Plaintiffs and their most vulnerable unhoused residents, as well as King County's millions of transit riders.

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 27
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-61

I certify that this memorandum contains 8,375 words, in compliance with the Local Civil Rules.

DATED this 5th day of May, 2025.

LEESA MANION
King County Prosecuting Attorney

*/s/ David J. Hackett*
David J. Hackett, WSBA #21234
*General Counsel to Executive*
Alison Holcomb, WSBA #23303
*Deputy General Counsel to Executive*
Erin Overbey, WSBA #21907
*Senior Deputy Prosecuting Attorney*
Cristy Craig, WSBA #27451
*Senior Deputy Prosecuting Attorney*
Donna Bond, WSBA #36177
*Senior Deputy Prosecuting Attorney*

Chinook Building
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
david.hackett@kingcounty.gov
aholcomb@kingcounty.gov
eroverbey@kingcounty.gov
cristy.craig@kingcounty.gov
donna.bond@kingcounty.gov

*Attorneys for Plaintiffs Martin Luther King, Jr. County*

PACIFICA LAW GROUP LLP

*/s/ Paul J. Lawrence*
Paul J. Lawrence, WSBA #13557
Jamie L. Lisagor, WSBA #39946
Sarah S. Washburn, WSBA # 44418
Meha Goyal, WSBA #56058
Luther Reed-Caulkins, WSBA #62513

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 28
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101
T: 206-245-1700
F: 206-245-1750
Paul.Lawrence@PacificaLawGroup.com
Jamie.Lisagor@PacificaLawGroup.com
Sarah.Washburn@PacificaLawGroup.com
Meha.Goyal@PacificaLawGroup.com
Luther.Reed-Caulkins@PacificaLawGroup.com

*Attorneys for Plaintiffs Martin Luther King County, Jr., Pierce County, County and City of San Francisco, County of Santa Clara, City of Boston, and City of New York*

JASON J. CUMMINGS
Snohomish County Prosecuting Attorney

*/s/ Bridget E. Casey*
Bridget E. Casey, WSBA #30459
Rebecca J. Guadamud, WSBA #35588
Rebecca E. Wendling, WSBA #35887

Snohomish County Prosecuting Attorney's Office
3000 Rockefeller Avenue, M/S 504
Everett, WA 98201-4046
(425) 388-6392
Bridget.Casey@co.snohomish.wa.us
Rebecca.Guadamud@co.snohomish.wa.us
Rebecca.Wendling@co.snohomish.wa.us

*Attorneys for Plaintiff Snohomish County*

DAVID CHIU
San Francisco City Attorney

*/s/ David Chiu*
David Chiu (CA Bar No. 189542)*
*San Francisco City Attorney*
Yvonne R. Meré (CA Bar No. 175394)*
*Chief Deputy City Attorney*
Mollie M. Lee (CA Bar No. 251404)*

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 29
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Chief of Strategic Advocacy*
Sara J. Eisenberg (CA Bar No. 269303)*
*Chief of Complex and Affirmative Litigation*
Ronald H. Lee (CA Bar No. 238720)*
Alexander J. Holtzman (CA Bar No. 311813)*
*Deputy City Attorneys*
1390 Market Street, 7th Floor
San Francisco, CA 94102
(415) 554-4700
Cityattorney@sfcityatty.org
Yvonne.Mere@sfcityatty.org
Mollie.Lee@sfcityatty.org
Sara.Eisenberg@sfcityatty.org
Ronald.Lee@sfcityatty.org
Alexander.Holtzman@sfcityatty.org

*Attorneys for Plaintiff*
*City and County of San Francisco*


OFFICE OF THE COUNTY COUNSEL,
COUNTY OF SANTA CLARA

*/s/ Tony LoPresti*
Tony LoPresti (CA Bar No. 289269)*
*County Counsel*
Kavita Narayan (CA Bar No. 264191)*
*Chief Assistant County Counsel*
Meredith A. Johnson (CA Bar No. 291018)*
*Lead Deputy County Counsel*
Stefanie L. Wilson (CA Bar No. 314899)*
Cara H. Sandberg (CA Bar No. 291058)*
*Deputy County Counsels*
70 West Hedding Street
East Wing, 9th Floor
San José, CA 95110
(408) 299-9021
tony.lopresti@cco.sccgov.org
kavita.narayan@cco.sccgov.org

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 30
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1          meredith.johnson@cco.sccgov.org
2          stefanie.wilson@cco.sccgov.org
           cara.sandberg@cco.sccgov.org
3
4          *Attorneys for Plaintiff County of Santa Clara*

5
6          ADAM CEDERBAUM
           Corporation Counsel, City of Boston
7
           */s/ Samantha H. Fuchs*
8          Samantha H. Fuchs (MA BBO No. 708216)*
           *Senior Assistant Corporation Counsel*
9          Samuel B. Dinning (MA BBO No. 704304)*
           *Senior Assistant Corporation Counsel*
10         One City Hall Square, Room 615
           Boston, MA 02201
11         (617) 635-4034
           samantha.fuchs@boston.gov
12         samuel.dinning@boston.gov
13
           *Attorneys for Plaintiff City of Boston*
14
15         MURIEL GOODE-TRUFANT
           Corporation Counsel of the City of New York
16
17         */s/ Doris Bernhardt*
           Doris Bernhardt (NY Bar No. 4449385)*
18         Joshua P. Rubin (NY Bar No. 2734051)*
           Aatif Iqbal (NY Bar No. 5068515)*
19         *Assistant Corporation Counsels*
           100 Church Street
20         New York, NY 10007
           (212) 356-1000
21         dbernhar@law.nyc.gov
           jrubin@law.nyc.gov
22         aiqbal@law.nyc.gov
23
           *Attorneys for Plaintiff City of New York*
24
25         * *Pro Hac Vice application forthcoming*
26
27

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 31
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-65

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2025, I served a true and correct copy of the foregoing

document on the following parties by the method(s) indicated below:

| | |
|---|---|
| Scott Turner<br>Secretary of Housing and Urban Development<br>U.S. Department of Housing and Urban<br>Development<br>Office of the General Counsel<br>Robert C. Weaver Federal Building<br>451 7th Street SW<br>Washington, DC 20410 | ☐ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| U.S. Department of Housing and Urban<br>Development<br>Office of the General Counsel<br>Robert C. Weaver Federal Building<br>451 7th Street SW<br>Washington, DC 20410 | ☐ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| Sean Duffy<br>Secretary of Transportation<br>U.S. Department of Transportation<br>Office of the General Counsel<br>1200 New Jersey Avenue, SE<br>Washington, DC 20590 | ☐ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| U.S. Department of Transportation<br>Office of the General Counsel<br>1200 New Jersey Avenue, SE<br>Washington, DC 20590 | ☐ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| Matthew Welbes<br>Acting Administrator, Federal Transit<br>Administration<br>Federal Transit Administration<br>Office of the General Counsel<br>U.S. Department of Transportation, East<br>Building<br>1200 New Jersey Avenue, SE<br>Washington, DC 20590 | ☐ CM/ECF E-service<br>☐ Email<br>☒ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

CERTIFICATE OF SERVICE - 1

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

| Federal Transit Administration<br>Office of the General Counsel<br>U.S. Department of Transportation, East Building<br>1200 New Jersey Avenue, SE<br>Washington, DC 20590 | ☐ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| --- | --- |
| Alex Haas, Co-Director<br>Diane Kelleher, Co-Director<br>John Griffiths, Co-Director<br>Eric J. Hamilton, Deputy Assistant Attorney<br>Federal Programs Branch<br>Civil Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC  20530<br><br>alex.haas@usdoj.gov<br>diane.kelleher@usdoj.gov<br>john.griffiths@usdoj.gov<br>eric.hamilton@usdoj.gov | ☐ CM/ECF E-service<br>☒ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| Teal L. Miller, Acting United States Attorney<br>Rebecca S. Cohen, Civil Division Chief<br>United States Attorney's Office for the Western District of Washington<br>United States Attorney's Office<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br><br>teal.miller@usdoj.gov<br>rebecca.cohen@usdoj.gov | ☐ CM/ECF E-service<br>☒ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

DATED this 5th day of May 2025.

/s/ Gabriela DeGregorio
Gabriela DeGregorio
Litigation Assistant
Pacifica Law Group LLP

CERTIFICATE OF SERVICE - 2

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FER-67