No. 25-3664

IN THE UNITED STATES COURT OF APPEALS
IN THE NINTH CIRCUIT

SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development, et al.,

Defendants-Appellants,

v.

MARTIN LUTHER KING, JR. COUNTY, et al.,

Plaintiffs-Appellees.

**APPELLEES' BRIEF REGARDING EN BANC REVIEW**

Paul J. Lawrence
Jamie L. Lisagor
Sarah S. Washburn
PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101
Paul.Lawrence@PacificaLawGroup.com
Jamie.Lisagor@PacificaLawGroup.com
Sarah.Washburn@PacificaLawGroup.com
*Attorneys for Plaintiffs-Appellees*

## TABLE OF CONTENTS


I. INTRODUCTION ........................................................ 1

II. STATEMENT OF THE CASE.................................... 1

III. ARGUMENT ............................................................... 3

A. The Panel's Legal Analysis Does Not Warrant Further Review............................................................. 3

1. Compliance with antidiscrimination laws. .................... 4

2. Materiality certification. ................................................ 5

3. Restrictions on Uses of Funds. ...................................... 6

4. Verification of Immigration Status................................ 9

B. There Is No Other Reason For Further Review.......... 10

## TABLE OF AUTHORITIES

### Cases

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ........................................................... 8

*Harrington v. Purdue Pharma L.P.*,
603 U.S. 204 (2024) ........................................................... 9

*Hughey v. United States*,
495 U.S. 411 (1990) ........................................................... 9

*Lackey v. Stinnie*,
604 U.S. 192 (2025) ........................................................... 11

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ........................................................... 8, 9

*Trump v. Int'l Refugee Assistance Project*,
582 U.S. 571 (2017) ........................................................... 11

### Statutes

42 U.S.C. § 2000d-1 ........................................................... 4, 5

42 U.S.C. § 11386 ........................................................... 7, 8, 9

42 U.S.C. § 11381 ........................................................... 8

### Rules

Fed. R. App. P. 40(b) ........................................................... 1

## I. INTRODUCTION

As reflected in the fact that neither side here requested rehearing en banc in the time allotted for doing so, en banc review is unwarranted in this case. The panel's decision does not conflict with any decision of the Supreme Court. Nor does it conflict with any decision of this Court or any other court of appeals. Nor does the panel's affirmance and narrowing of the district court's preliminary injunction give rise to any issue of exceptional importance. *See* Fed. R. App. P. 40(b)(2). To the contrary, the panel carefully applied standard tools of statutory construction to the governing statutes and simply preserved the *status quo ante*. This Court should allow this litigation to continue in the district court without any further delay.

## II. STATEMENT OF THE CASE

Beginning in March of 2025, the Departments of Housing and Urban Development (HUD) and Transportation (DOT) began seeking to impose various new conditions on federal grants that fund homelessness services, transit, and

infrastructure. Appellees—thirty-one cities, counties, and local housing and transportation agencies (hereinafter, "Local Governments")—sued to block enforcement of the new conditions. As relevant here, the Local Governments claim that these new conditions exceed the agencies' statutory authorizations to administer the grant programs at issue.

On June 3, 2025, the district court entered a preliminary injunction barring the agencies from enforcing the new conditions. The district court found that the Local Governments are likely to succeed on the merits and that the equities favored maintaining the status quo while litigation proceeds.

The federal government appealed. This Court affirmed "in large part" and remanded with instructions to narrow the preliminary injunction to allow the agencies to require the Local Governments to certify that the activities they carry out with federal funds comply with Title VI. Slip Op. 19; *see id.* at 39. Judge Bumatay concurred in the judgment in part and dissented in part. He agreed with the majority that the federal government

lacks the power to require grant recipients to certify that activities they carry out *without* the federal funding at issue comply with Title VI. *Id.* at 43 (Bumatay, J., concurring in the judgment in part and dissenting in part). He otherwise would have reversed. *Id.* at 43–59.

Neither side requested panel rehearing or rehearing en banc in the time allotted to do so. This Court, however, has requested briefs on whether to rehear the case en banc.

## III. ARGUMENT

### A. The Panel's Legal Analysis Does Not Warrant Further Review.

The panel upheld the preliminary injunction as to four categories of grant conditions: (A) those requiring grant recipients to certify that activities they carry out without the federal funding at issue do not include any "programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal antidiscrimination laws"; (B) those requiring recipients to certify that compliance with antidiscrimination laws is "material" for purposes of the False Claims Act (FCA);

(C) those restricting the recipients' use of HUD Continuum of Care funds related to homeless assistance in various ways; and (D) the HUD condition requiring recipients to verify the immigration status of individual grant recipients in a particular manner. Slip Op. 11–13, 39. None of the preliminary relief the panel upheld as to any of these categories warrants further review.

**1. Compliance with antidiscrimination laws.**

The panel "conclude[d] that the Local Governments are likely to succeed in establishing that the conditions are unlawful to the extent they cover programs or activities that do *not* receive federal financial assistance" from HUD or DOT. Slip Op. 19. That conclusion flows directly from the text of Title VI, which allows the federal government to effectuate that provision only with respect to any "program" receiving "financial assistance." 42 U.S.C. § 2000d-1.

"The [federal] government agrees" with this analysis. Slip Op. 43 (Bumatay, J., concurring in the judgment in part and dissenting in part). So does Judge Bumatay. *See id.*

**2. Materiality certification.**

The panel concluded that the Local Governments are likely to establish that HUD and DOT cannot require them to certify that complying with antidiscrimination laws is "material" for purposes of the False Claims Act. *Id.* at 19–22 (majority opinion). As the panel explained, "[n]othing in the text of Title VI's enforcement provision expressly contemplates" such assurances, and "nothing in the FCA" supports requiring them either. *Id.* at 20–21. This holding accordingly respects the language of the governing statutes.

Furthermore, as the federal government conceives of this "materiality" condition, the holding is of little consequence. The federal government has asserted that the materiality condition does not seek to "lower the [materiality] standard required under the False Claims Act." *Id.* at 21. According to the federal

government, therefore, "the meaning of 'materiality' under the False Claims Act" remains the same. *Id.* at 44 (Bumatay, J., concurring in the judgment in part and dissenting in part). Plaintiffs or defendants in FCA cases therefore retain the same ability they had before the panel's decision to prove or dispute that violations of antidiscrimination law were or were not material. In short, no legitimate governmental interest is affected here.

**3. Restrictions on Uses of Funds.**

The panel next held that the district court did not abuse its discretion in preliminarily enjoining conditions that go beyond regulating "the immediate destination of funds" and instead "target [certain] effects of the funded activities and [certain] ideas they promote." *Id.* at 23, 32 (majority opinion). The federal government recognizes that there is no "express statutory authority" for these funding conditions. *Id.* at 24. But on appeal, the government argued for the first time that a residual provision in the McKinney-Vento Homeless Assistance Act ("Homeless

Assistance Act"), 42 U.S.C. § 11386(b)(8), gives it "implied authority" to issue the conditions. *Id.* After the Act lists several requirements that participants in the Continuum of Care program must follow, that residual provision requires grant recipients to comply with other conditions that the HUD Secretary may establish to carry out the program "in an effective and efficient manner." 42 U.S.C. § 11386(b)(8).

The panel could have deemed the federal government's new argument forfeited for failing to raise it below. In any event, the panel properly rejected the argument. The words "effective and efficient" most naturally pertain to the operation of funded activities themselves, not any downstream "*effects* of funded activities [or] the ideas they *promote*." Slip Op. 27. And the *ejusdem generis* canon precludes reading the Act's residual provision to depart from the "common denominator" in the seven preceding provisions—namely, that "conditions must be tied to the statute's underlying goals of 'ending homelessness' and 'minimizing the trauma' to individuals who participate in

authorized programs." *Id.* at 29 (quoting 42 U.S.C. §§ 11381(1)–(2)).

The dissent responds that *ejusdem generis* should not apply to Section 11386(b)(8) because that provision provides a "broad delegation" to the federal government—a delegation that the dissent says gives "discretionary authority" to the government to impose any condition that is "reasonable." *Id.* at 48, 55, 57 (Bumatay, J., concurring in the judgment in part and dissenting in part). In other words, the dissent seems to suggest that Section 11386(b)(8)'s residual clause constitutes an express delegation of the sort that requires *Chevron*[1] deference even in the *Loper Bright*[2] era. *Id.* at 56–57.

Not only did the federal government fail to make any such deference argument below, it did not make any such argument to the panel either. For good reason: even when *Chevron* was at its

---

[1] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

[2] *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

height, the Supreme Court applied the *ejusdem generis* canon to catchalls that might appear in a vacuum to delegate authority. *See, e.g.*, *Hughey v. United States*, 495 U.S. 411, 416–17 (1990) (provision allowing consideration of "such other factors as the court deems appropriate"). And the same week the Court decided *Loper Bright*, it applied *ejusdem generis* to a catchall that allows Chapter 11 bankruptcy plans to include "any other appropriate provision." *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 216–19 (2024) (citation omitted). Writing for the Court, Justice Gorsuch explained that the term "appropriate" "draws its meaning from surrounding provisions" of the statute. *Id.* at 218.

So too here. As the panel recognized, Section 11386(b)(8)'s phrase "effective and efficient" draws its meaning from the Homeless Assistance Act's surrounding provisions, not the federal government's say-so. *See* Slip Op. 29.

**4. Verification of Immigration Status.**

Finally, the panel held that the Local Governments are likely to establish that the condition requiring them to "use

SAVE, or an equivalent verification system" to prevent any federally funded benefit from being provided to an ineligible noncitizen is unlawful. *Id.* at 33. As the panel explained, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 contains "no governing requirement to use SAVE or an equivalent system." *Id.* (citing 8 U.S.C. § 1642).

To be sure, that statute gives the Attorney General the authority "to make 'regulations requiring verification.'" *Id.* (quoting 8 U.S.C. § 1642(a)). But that just shows why the panel's decision on this score is so modest. The Attorney General has not "finalized a verification rule." *Id.* If and when he does, and if the rule requires using SAVE or an equivalent system, the federal government can then argue that its verification condition is valid (at least as to future grants). Until then, the condition cannot be enforced.

**B. There Is No Other Reason For Further Review.**

This case's limited holdings and nascent posture underscore that en banc review is unwarranted. The only

question the panel decided is whether the new funding conditions should be allowed to go into effect while this litigation is pending. And the panel affirmed and narrowed the district court's preliminary injunction preserving the status quo based on the Local Governments' "likelihood of success" once litigation is complete. *Id.* at 14.

"The purpose of such interim equitable relief is not to conclusively determine the rights of the parties." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (per curiam). Instead, it "is merely to preserve the relative positions of the parties until a trial on the merits can be held" and to "balance the equities as the litigation moves forward." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025) (citations omitted). Once a final judgment issues, an aggrieved party can bring the case back to this Court, and, if necessary, seek en banc review.

In the meantime, nothing about the approach the panel took to assessing the merits gives rise to any serious concern. In his dissent, Judge Bumatay suggests that the panel's reasoning

"overstep[s]" the judicial role and is grounded in "dislike for the President's policies." Slip Op. 40 (Bumatay, J., concurring in the judgment in part and dissenting in part). Those charges fall flat. In reality, the panel's decision is grounded in the plain text of the statutes Congress enacted, as well as careful attention to their design and structure. The panel's legal analysis thus recognizes the primacy of the political branches in this area, just as the dissent would have it. The dissent may read the statutes themselves a different way. But there is no genuine disagreement here about the proper judicial role in this context.

RESPECTFULLY SUBMITTED this 10th day of November, 2026.


PACIFICA LAW GROUP LLP

*/s/ Paul J. Lawrence*
Paul J. Lawrence, WSBA #13557
Jamie Lisagor, WSBA #39946
Sarah S. Washburn, WSBA #44418

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101
T: 206-245-1700

F: 206-245-1750
Paul.Lawrence@PacificaLawGroup.com
Jamie.Lisagor@PacificaLawGroup.com
Sarah.Washburn@PacificaLawGroup.com

*Attorneys for all Plaintiffs-Appellees*

PUBLIC RIGHTS PROJECT

*/s/ Sharanya Mohan*
Sharanya (Sai) Mohan (CA Bar No. 350675)
Naomi Tsu (OR Bar No. 242511)
Toby Merrill (MA Bar No. 601071)*
Graham Provost (D.C. Bar No. 1780222)**
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
(510) 738-6788
sai@publicrightsproject.org
naomi@publicrightsproject.org
toby@publicrightsproject.org
graham@publicrightsproject.org

* Licensed in Illinois, Massachusetts, New York, and Washington, D.C. Not licensed to practice law in California.
** Licensed in Washington, D.C. Not licensed to practice law in California

*Counsel for Plaintiffs-Appellees City of Columbus, City & County of Denver, Metro Government of Nashville & Davidson County, Pima County, County of Sonoma, City of Bend, City of Cambridge, City of Chicago, City of Culver City, City of Minneapolis, City of*

*Pasadena, City of Pittsburgh, City of Portland, City of San José, City of Santa Monica, City of Tucson, City of Wilsonville, Santa Monica Housing Authority*

## CERTIFICATE OF SERVICE

I certify that on this 10th day of November, 2026, I electronically filed the foregoing document with the Clerk of the Court of Appeals, Ninth Circuit using the PACER/ACMS system which sends notification of such filing to all parties who are registered with the PACER/ACMS system.

PACIFICA LAW GROUP LLP

*s/ Mendy Graves*
Mendy Graves
Litigation Assistant
401 Union Street, Suite 1600
Seattle, WA 98101
mendy.graves@pacificalawgroup.com

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 11. Certificate of Compliance for Petitions for Rehearing/Responses**

**9th Cir. Case Number(s)** 25-3664

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

[X] Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)–(6) and **contains the following number of words: 1,876.**

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[ ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** _*/s/ Jamie L. Lisagor*_________________________
**Date** _November 10, 2026____________________